RECK v. WHITTLESBERGER.

1. MASTER AND SERVANT — WORKMEN'S COMPENSATION ACT — INDUSTRIAL ACCIDENT BOARD — EVIDENCE.

Findings of fact handed down by the industrial accident board, on hearings pursuant to statute, are conclusive, in the absence of fraud, if any competent, legal evidence is produced to sustain the facts so found. Act No. 10, Extra Session 1912 (2 How. Stat. [2d Ed.] § 3939 et seq.).

2. SAME—HEARSAY—ESTATES OF DECEDENTS.

Although statements made by an injured employee relating to his feelings, mental or physical, are admissible in evidence in proceedings under the compensation act, statements made as to the cause of the accident or source of injury are not admissible. But it is not required by the statute that the decision of the board must in all cases be reversed because error may have been committed in the admission of incompetent testimony, when there appears in the record a legal basis for its findings.

3. SAME—REPORT OF ACCIDENT.

> An employer's official report of an accident, filed with the industrial accident board, as required by law, where the employer had ample opportunity to satisfy himself of the facts, and all sources of information were at his command when he made the report, may be taken as *prima facie* evidence that an accident occurred in the manner set forth, which fact the evidence did not tend to controvert.

Certiorari to the Industrial Accident Board. Submitted April 30, 1914. (Docket No. 45.) Decided July 24, 1914.

Application to the Industrial Accident Board for an award of compensation against Frank B. Whittlesberger for the death of Rudolph Reck. A judgment for the applicant is reviewed by said Whittlesberger on writ of certiorari. Affirmed.

*Bowen, Douglas, Eaman & Barbour,* for appellant.

*John Dohrman,* for appellee.

STEERE, J. This case is before us upon a writ of certiorari to review a decision or determination of the industrial accident board of Michigan affirming an award of $2,250 made by a committee of arbitration against Frank B. Whittlesberger, the appellant, in favor of the widow of Rudolph Reck, whose death is charged to have resulted from an injury sustained while in appellant's employ. The proceedings were instituted and conducted under and by virtue of Act No. 10, Pub. Acts 1912 (Extra Session).[1]

Pursuant to section 11 of said act the industrial accident board reviewed the decision of said committee of arbitration and such records as were kept by it, including the testimony it had taken. The return to this writ states, with some slight corrections which are made, that all the material testimony is correctly

---

[1](2 How. Stat. [2d Ed.] § 3939 *et seq.*).

and sufficiently set forth in appellant's petition for a consideration of the questions raised.

The record discloses that on January 12, 1913, said Rudolph Reck, a baker by trade, died at a hospital in Detroit of septic pneumonia, which resulted, as his physician testified, from systemic sepsis developed from an infected wound in his hand, claimed to have been caused, on December 26, 1912, by a nail in some fuel with which he was firing an oven in appellant's bakery on Randolph street, in said city, where deceased was then employed.

The bakeshop or room in which deceased was working at the time it is alleged he sustained the initial injury was about 100 feet long and 40 feet wide, and on that day two other bakers were at work in the room with him, a boy also being with them in the afternoon. Deceased finished his work for the day as usual, and left at the regular quitting time, which was about 7:30 p. m. His daughter testified that he arrived home that evening a little later than his customary time, and showed her an injury where he had hurt his hand at or near the thumb, stating that he chopped up a box and "ran a nail in his thumb." He worked full time at the shop the next day and until 4 p. m. the succeeding day. During this time the men with whom he worked saw and heard nothing of any accident; neither did they observe anything unusual in his work or conduct. He did not, however, return to work after December 28th, the day on which he quit at 4 o'clock.

Dr. Smith, the only medical witness who testified, first treated deceased on January 2, 1913. At that time his employer and fellow bakers were first informed of the claim that he had sustained any injury while at his work. Dr. Smith testified, as before stated, that septic trouble originating with the wound in the hand spread generally throughout the system

181 Mich.—30.

and resulted in pneumonia, which ended fatally. This is not controverted, but it is urged that no competent evidence was produced showing where or how deceased injured his hand, or that the injury arose out of and in the course of his employment.

Following a claim regularly made for compensation by the widow under said Act No. 10, generally known as the workmen's compensation act, a committee of arbitration was selected, as provided by the act, and hearings were held. One of said hearings was at the bakery where the injury was claimed to have been received. None of the employees saw the accident or were shown to have personal knowledge of when or how it occurred. The committee then threw the door wide open for hearsay evidence, and, against objection, entertained any testimony offered as to what witnesses had heard deceased and others say about it.

Appellant's assignments of error are as follows:

"*First.* In holding that there was sufficient proof that Rudolph Reck received a personal injury arising out of and in the course of his employment to justify a decree in favor of the claimant.

"*Second.* In holding that hearsay evidence offered for the purpose of proving that the deceased received a personal injury arising out of and in the course of his employment was admissible, and denying the objection of your petitioner to its admission.

"*Third.* In determining and ordering your petitioner to pay the said widow the sum of $2,250, and costs, as compensation for the injury and attendant death of Rudolph Reck."

The third assignment is manifestly contingent on the other two, and calls for no separate consideration. The first and second present the two questions of whether this unrestricted admission of hearsay testimony was reversible error, and whether there was any competent evidence in the case on which to base a finding that the injury complained of arose out of, and in the course of, deceased's employment.

At the threshold of this inquiry we are confronted with the proposition that the board is made by the law creating it the final tribunal as to the facts, and, it having made a finding of facts legally sufficient to support the award, its decision cannot be questioned by the court.

Section 12 of part 3 of said act provides:

"The findings of fact made by said industrial accident board acting within its powers, shall, in the absence of fraud, be conclusive, but the Supreme Court shall have power to review questions of law involved in any final decision or determination of said industrial accident board: *Provided,* that application is made by the aggrieved party within 30 days after such determination by certiorari, mandamus or by any other method permissible under the rules and practice of said court or the laws of this State, and to make such further orders in respect thereto as justice may require."

As a legal conclusion, no one will deny that in any judicial proceeding the competency of testimony offered in support of or against any material fact is a question of law. It does not follow, however, that the appellate court in all instances must set aside an adjudication because of erroneous admission or rejection of evidence. The doctrine that prejudice is always presumed from error is not accepted by all students of jurisprudence with complacency, even in those jurisdictions where the doctrine prevails. Neither do we conceive that in reviewing decisions of this board all technical rules of law, often made imperative by precedent in reviewing the action of regularly constituted trial courts, must be applied. The board is purely a creature of statute, endowed with varied and mixed functions. Primarily it is an administrative body, created by the act to carry its provisions into effect. Supplemental to this, in order that it may more efficiently administer the law, it is vested with quasi judicial powers, plenary within the limits fixed by the statute.

Along the lines marked out by the act it is authorized to pass upon disagreements between employers and claimants in regard to compensation for injuries, and to that end make and adopt rules for a simple and reasonably summary procedure. Hearings are to be held upon notice to parties in interest; compulsory process for attendance of witnesses and power to administer oaths is given; the parties in interest are entitled to notice, to be heard and to submit evidence; a review, findings, a decision, and an award of compensation are provided for, though in the final test resort must be had to the courts to enforce the awards. In those proceedings the board does not act solely as a mere arbitrator. It has various plenary powers well defined, and its status is unique in the particular that it performs in combination both administrative functions and certain of the duties of a court, a referee, and an arbitration board. Its findings of facts upon hearings are conclusive, and cannot be reviewed, except for fraud, provided, necessarily, that any competent, legal evidence is produced from which such facts may be found. Facts cannot be evolved from the inner consciousness of that tribunal on bare supposition, guess, or conjecture, nor on rumor or incompetent evidence. To so determine the rights of parties would be to act outside the authority conferred by the act, and without jurisdiction.

While it was evidently the intent of this law that, by concise and plain summary proceedings, controversies arising under the act should be promptly adjusted, under a simplified procedure unhampered by the more technical forms and intervening steps which sometimes cumber and delay regular litigation, yet the language of the act, and provision for review of questions of law, indicate clearly an intent that the elementary and fundamental principles of a judicial inquiry should be observed, and that it was not the

intent to throw aside all safeguards by which such investigations are recognized as best protected.

The rule against hearsay evidence is more than a mere artificial technicality of law. It is founded on the experience, common knowledge, and common conduct of mankind. Its principles are generally understood and acted upon in any important business transaction or serious affair in life. In such matters men refuse to reply on rumor or what some one has heard others say, and demand the information at first hand. The common, instinctive weight usually given such evidence is illustrated by this statement of Dr. Smith, after relating what deceased told him as to how he hurt his hand, "I don't know anything about it;" and of Mrs. Taylor, a daughter of deceased, who, in connection with her testimony as to what she had been told, said, "I really don't know myself; * * * the only thing I know about this matter is that the night I went home they took him to the hospital." The danger and unreliability of hearsay testimony is well exemplified in her evidence. She testified that Haberstoh, a fellow workman in the shop, saw the accident and described it to her, as she related it while testifying. This, on the surface, would seem to be about as satisfactory and convincing hearsay evidence as could be produced. Had Haberstoh been unavailable, it would have been equally competent and uncontrovertible, but it was shown by Haberstoh himself that he saw nothing of any accident, and obtained his information from Charles Ruskei, the boy who worked in the shop afternoons, who himself saw nothing, but heard deceased state how he hurt his hand.

Coming directly to this line of testimony as applied to workmen's compensation cases, it is said in Boyd on Workmen's Compensation, p. 1123:

"The statements made by an injured man as to his bodily or mental feelings are admissible, but those

made as to the cause of his illness are not to be received in evidence. The rule applies to statements made by a deceased workman to a fellow workman as to the cause of his injury."

And more fully in Bradbury on Workmen's Compensation, p. 403, as follows:

"The statement made by an employee in the absence of his employer, by a deceased man, as to his bodily or mental feelings are admissible in evidence, but those made as to the cause of his illness are not admissible in evidence and where there is no other evidence of an accident arising out of and in the course of the employment than statements made by a deceased employee in the absence of his employer, an award cannot be sustained."

In *Gilbey* v. *Railway Co.*, 3 B. W. C. C. 135, where a workman at a meat market on arriving home told his wife that he had broken his rib when trying to save some meat from slipping into the dirt, the court said:

"To hold such statements ought to be admitted as evidence of the origin of the facts deposed is, I think, impossible. Such a contention is contrary to all authority."

This rule is emphasized to the extent of even holding admission of such evidence reversible error in *Smith* v. *Hardman & Holden, Ltd.*, 6 B. W. C. C. 719, because the mind of the trial court might have been "colored by his admitting statements which are inadmissible as evidence."

We do not think, however, that under the language used in our workmen's compensation act the decisions of its administrative board must be in all cases reversed under the rule of presumptive prejudice, because of error in the admission of incompetent testimony, when, in the absence of fraud, there appears in the record a legal basis for its findings, which are

made "conclusive" by statute when said board acts within the scope of its authority.

As a part of the plan for a practical administration of this law, section 17 of part 3 requires each employer who elects to come under the provisions of said act to keep a record of injuries "received by his employees in the course of their employment," and within ten days after an accident resulting in personal injury to report the same in writing to the industrial accident board, on blanks printed for that purpose.

The first knowledge which came to the board of this accident is contained in the report of appellant, made by an admitted agent. It is dated January 9, 1913, and marked "First Report of Accident." It states, amongst other things, that on December 26, 1912, Reck, a baker by trade, was injured; the "cause and manner of accident" being that he "was throwing wood in furnace and a nail run in left hand inflicting a deep gash." This report was made three days before Reck's death, and indicates that the employer. or his representatives, had full notice of the injury, with ample opportunity to investigate while Reck was alive, and all sources of information were both fresh and available. A second report, after Reck's death, made on January 15, 1913, giving the same date of the accident, etc., states of its "cause and manner:"

"The injured was throwing wood in the fire and a nail scratched his left hand. He worked for two or three days after the accident, when the hand became infected, and he was sent to the hospital. After the hand had started to heal nicely he contracted broncho-pneumonia, which disease caused his death January 13, 1913."

We think that such reports from the employer, where all sources of information are at his command when the reports are made, and he has had ample opportunity to satisfy himself of the facts, can properly be taken as an admission, and, at least, as *prima facie*

evidence that such accident and injury occurred as reported.

No evidence was offered to impeach the reports or to show that the accident occurred otherwise than as stated in them. Eliminating from consideration the hearsay testimony erroneously admitted, which could not affect either way the legal significance of such reports, the record furnishes legal support for the findings of fact made. Consequently such findings are to be recognized as conclusive under the statute.

The decision of said industrial accident board is therefore affirmed.

MCALVAY, C. J., and BROOKE, KUHN, STONE, OSTRANDER, BIRD, and MOORE, JJ., concurred.