FITZGERALD v. LOZIER MOTOR CO.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—INDUS-
TRIAL ACCIDENT BOARD—EVIDENCE—APPEAL AND ERROR.

Decisions of the Industrial Accident Board will not be re-
versed because of the admission of incompetent evidence
in hearings pursuant to Act No. 10, Extra Session 1912,
in the absence of fraud, if there is any legal basis for its
findings.

2. SAME—EVIDENCE—HEARSAY—ADMISSIONS.

On such hearing, a memorandum of the injury made by the
foreman of the injured employee in pursuance of his duty
to report all accidents in his department to his superior,
who in turn reported them to the employing company, was
admissible in evidence as an admission on the part of said
company by its agent.

3. SAME—WEIGHT OF EVIDENCE—PRIMA FACIE CASE.

In the proceedings in this court such admission will be con-
sidered as *prima facie* evidence that such an accident and
injury occurred, and makes a legal basis for the findings of
the board.

4. SAME—EVIDENCE—PROXIMATE CAUSE.

After eliminating the erroneous testimony, it is *held*, that

there is sufficient to support the finding that the injury arose out of and in the course of the deceased's employment, and was the proximate cause of his death, and the decision of the Industrial Accident Board awarding compensation is affirmed.

*Certiorari* to the Industrial Accident Board. Submitted June 3, 1914.    (Docket No. 7.)    Decided September 28, 1915.

Application by Emma Fitzgerald to the Industrial Accident Board for an award of compensation against the Lozier Motor Company for the death of her husband. A judgment for the applicant is reviewed by said motor company on writ of *certiorari*. Affirmed.

*F. J. Ward,* for appellant.

*Charles Wagner,* for appellee.

KUHN, J.    This is a proceeding brought before us by *certiorari* to the Industrial Accident Board of this State to review a decision rendered by said board October 22, 1913, wherein it affirmed an award by a board of arbitration granting the claimant and appellee the sum of $7.21 per week for a period of 300 weeks.

The record discloses that William J. Fitzgerald, deceased, a machinist about 45 years of age, went to work in the assembling department of the Lozier Motor Company on or about January 20, 1913. He worked in this department a few days, and then was transferred to the carburetor department, where he continued to work until about February 4, 1913.

Some time in the last of January, 1913, the wife of the deceased saw a scratch on his hand, at which time the hand was badly swollen and inflamed, and the deceased told her that he received it on the carburetors in the assembly room of the Lozier Company. During the latter part of January the deceased went

to see Mr. Whitehead, an employee of the Lozier Motor Company, to have the scratch on his hand dressed. His hand at the time was badly inflamed, and it looked as if it had been infected for at least 48 hours, and the deceased received medical attention from Mr. Whitehead.

About the 30th of January Mr. Brown, an employee of the Lozier Motor Company, and the foreman of the department in which the deceased was employed, noticed him at work with a bandage on his thumb. He asked the deceased what was the trouble with his thumb, and the deceased informed him that he had scratched it about a week prior to that date— that is, on January 23d. Working on the same bench about six feet from the deceased was a Mr. Anderson, who stated that he did not see nor did he know anything of an accident until the deceased told him he had hurt his hand on the manifold on the day before he had the talk with him.

On the 5th of February the condition of Mr. Fitzgerald's hand was such that he was obliged to quit work, and was never afterwards able to go back to his work, and continued medical treatments until the day of his death, which was March 8, 1913. The deceased treated with Dr. Hayes until about the 12th of February, at which date he went to the office of Dr. Raymond C. Andries, who continued to treat him until the time of his death. The doctor gave as the cause of his death "arterio sclerosis and myocarditis." "Myocarditis," the doctor explained to mean inflammation of the heart muscle, and testified it might be caused by a toxic infection, and that such an infection would tend to lower bodily resistance to other disease. He also testified that when he first saw the deceased it was apparent that he had an infection, and that the condition of the hand showed that there had been an entrance of micro-organisms into it in some way from some cause.

A nurse, who stated that she had had some experience in the treatment of cases of blood poisoning, testified as to the condition of the deceased on the day before and up to the time of his death, and stated that the discoloration in spots on his body, in her opinion, indicated symptoms of blood poisoning, and that she also saw the wound on the hand.

The assignments of error relied upon by appellant are as follows:

"That the Industrial Accident Board erred:

"(1) In holding that said William J. Fitzgerald, deceased, received a personal injury arising out of and in the course of his employment while he was employed by your petitioner.

"(2) In holding that said William J. Fitzgerald, deceased, died as the result of a personal injury arising out of and in the course of his employment.

"(3) In holding that a personal injury arising out of and in the course of his employment was the proximate cause of the death of the deceased, William J. Fitzgerald.

"(4) In holding that the death of said William J. Fitzgerald was not the result of a disease unconnected in any way with his employment with your petitioner.

"(5) In holding that the death of said William J. Fitzgerald was the result of a personal injury sustained on or about January 23, 1913, while in the employ of your petitioner.

"(6) In admitting into evidence and considering as part thereof the evidence of the claimant, Emma Fitzgerald, the witnesses William Brown and Burns L. Whited, as to conversations they had with the deceased, which were not in the presence of your petitioner or any officer thereof, and not at the time of the alleged accident.

"(7) In admitting as evidence and considering as part thereof the memorandum made by the witness William Brown of a conversation had between said William Brown and said deceased, William J. Fitzgerald, in regard to what said William J. Fitzgerald had told him pertaining to said alleged accident and personal injury.

"(8) In determining and ordering your petitioner to pay said claimant, Emma Fitzgerald, the sum of seven and twenty-one hundredths dollars ($7.21) per week for 300 weeks as compensation because of the death of said William J. Fitzgerald."

It may be noticed that the assignments of error relate principally to three questions: Whether the unrestricted admission of hearsay testimony was reversible error; and whether there was any competent evidence in the case on which a finding could be based that the injury complained of arose in the course of the deceased's employment; and whether it can be said that the injury complained of was the proximate cause of the death of the deceased.

It is urged by the appellee that the hearsay rule should not be held to apply to arbitrations under the provisions of the workmen's compensation act. This question has quite recently had the consideration of this court, in the case of *Reck* v. *Whittlesberger*, 181 Mich. 463 (148 N. W. 247) (found also in 5 Negligence and Compensation Cases Annotated, p. 917), and the rule against hearsay evidence and its applicability to proceedings under this act are very fully discussed, and this conclusion is arrived at:

"We do not think, however, that under the language used in our workmen's compensation act the decisions of its administrative board must be in all cases reversed under the rule of presumptive prejudice, because of error in the admission of incompetent testimony, when, in the absence of fraud, there appears in the record a legal basis for its findings, which are made 'conclusive' by statute when said board acts within the scope of its authority."

The question then is: Was there any competent evidence offered to make a *prima facie* case in support of the claimant's contention? Mr. Brown, who was the foreman in charge of the department of the factory in which the deceased was employed, testified that it

was his duty to inquire about all accidents that occurred in the factory, and that he first noticed that Mr. Fitzgerald had sustained an injury on January 30th; that after inquiring of Mr. Fitzgerald concerning the nature of the injury he immediately made a memorandum in writing of the information which he obtained, which was offered in evidence, and which read as follows:

"W. J. Fitzgerald, last Thursday afternoon, scratched on manifold, right hand, on top of the thumb joint. January 23d, 1913."

That he immediately thereafter notified Mr. Anderson, the general foreman of the Lozier Motor Company, of the fact of the accident. It appears that it was the duty of the employee, as soon as he was injured, to report his injuries, however slight, to the foreman of the shop in which he was employed, and that notice of this was given to all the employees by signs posted throughout the shop. It also appears that the Lozier Motor Company made a report of the accident to the Royal Indemnity Company, which report was submitted to counsel during examination before the arbitrators, but was not offered in evidence.

It is the contention of counsel that the memorandum made by the company's foreman is competent proof as an admission on the part of the company by its agent. On the other hand, it is claimed that the information therein contained is based purely on hearsay, and is inadmissible for that reason. In our opinion, under the circumstances of this case, the memorandum was admissible as an admission. Under the rules it was the duty of the employee to immediately notify the foreman in charge of the particular division of the factory in which he worked of the fact of an injury. It thereupon became the duty of the foreman of the factory to immediately notify his superior, and also to refer the employee to another foreman who had

charge of the "first-aid" work in the plant. It clearly appears that Fitzgerald, the deceased, after having received the injury, reported to the foreman in charge of the shop in which he was working, and this foreman thereupon perpetuated the information received by him by putting it in writing, and thereupon notified his superior of the fact of the injury. That these steps were taken was further evidenced by the fact that the defendant company notified the indemnity company.

It may be said that admissions of this kind, which are not made upon the party's personal knowledge of the facts, have little probative force, but the weight of such an admission in the trial of an ordinary case, and the circumstances under which it was made, would be for the consideration of the jury. In the proceeding before us, in our opinion, the admission may be considered at least as *prima facie* evidence that such an accident and injury occurred as reported, and this makes a legal basis for the findings of the board. See 17 Cyc. p. 814.

Without considering the purely hearsay testimony, which it may be said was erroneously admitted, and considering merely the testimony of the physician and the nurse and the admission of the company's foreman, we think that there is sufficient to support the inference that the injury arose out of and in the course of the deceased's employment, and was the proximate cause of his death.

We therefore affirm the decision of the Industrial Accident Board.

BROOKE, C. J., and STONE, BIRD, MOORE, and STEERE, JJ., concurred. OSTRANDER, J., did not sit.

This is a case assigned to the late Justice MCALVAY, remaining undetermined at the time of his death.