## GINSBERG v. BURROUGHS ADDING MACHINE CO.

1. MASTER AND SERVANT — WORKMEN'S COMPENSATION ACT — EVI-
DENCE—RES GESTÆ—NARRATION OF PAST EVENTS.

In proceedings under the workmen's compensation act,
statements made by the injured employee to his family
as to the accident he suffered, made at a place some dis-
tance away, several hours thereafter, were but the narra-
tion of past events, not part of the *res gestæ*, and inad-
missible in evidence.

2. SAME—STATEMENTS OF INJURED TO PHYSICIAN.

Statements as to the happening of the accident made by
the injured employee to the physician, who was not regu-
larly retained by defendant, but only called occasionally,
were inadmissible as hearsay.

3. SAME—APPEAL AND ERROR—HARMLESS ERROR.

If there is competent evidence to sustain the finding of the
industrial accident board, this court should affirm same,
notwithstanding the admission of incompetent hearsay tes-
timony.

4. SAME—BURDEN. OF PROOF.

The burden of establishing a claim for compensation rests
on those seeking the award, and they may prove their
case by circumstantial evidence as other cases are estab-
lished.

5. SAME—INDUSTRIAL ACCIDENT BOARD.

The industrial accident board is the trier of the facts, and
weighs and measures the conflicting testimony, medical
as well as lay, and may draw legitimate inferences from
established facts and weigh probabilities from such facts,
but inferences drawn must be from established facts, and
inferences may not be built upon inferences, possibilities
upon possibilities, or inferences drawn contrary to the
established facts or contrary to undisputed evidence.

6. SAME—ESTABLISHMENT OF CASE—INFERENCES—CONJECTURE.

The applicant may not recover if an inference favorable
to him can be arrived at only by conjecture or specula-
tion, or if there are two or more inferences equally con-
sistent with the facts arising out of the established facts.

7. SAME—HEARSAY—TESTIMONY TO SUSTAIN FINDING OF BOARD.

 Where it was claimed that deceased's death was caused
   by a blood clot originating from an injury to the thigh,
   and the only testimony of an injury to the thigh was
   hearsay, the only witness of the accident testifying that
   only deceased's toe was injured, there was no competent
   testimony to sustain the finding of the board awarding
   compensation. BIRD, MOORE, and KUHN, JJ., dissenting.

Certiorari to Industrial Accident Board. Submitted
October 9, 1918. (Docket No. 16.) Decided December 27, 1918. Rehearing denied May 1, 1919.

Dina Ginsberg presented her claim for compensation against the Burroughs Adding Machine Company
for the accidental death of her husband in defendant's
employ. From an order awarding compensation, defendant brings certiorari. Reversed.

*Standish Backus* (*William Strite McDowell* and
*Stevenson, Carpenter, Butzel & Backus*, of counsel),
for appellant.

*Louis James Rosenberg* (*Hollis Harshman*, of counsel), for appellee.

Plaintiff's husband, the decedent, was in the employ
of the defendant on June 6, 1917. He and others
were unloading boxes of steel from box cars. The
boxes of steel were about 1½ feet square and from
6½ to 7 feet long. They weighed from 400 to 800
pounds. They were loaded in the ends of the car.
The other workmen employed with decedent were
named Trzienski and Schacht. The manner of conducting the work in hand was that Trzienski and
Schacht with iron hooks, similar to ice tongs, would
take down the boxes from their places in the car;
with the aid of a roller, consisting of a two-inch gas
pipe, they would be conveyed to the door; there decedent would attach a similar hook which was connected

with rope and pulley; he would put the hooks or tongs in the center of the boxes and they would be lifted by the operation of the rope and pulley and slid out of the car. Schacht was not called as a witness, but Trzienski was. He testified that in the afternoon of the day in question he was trying to raise a box which he estimates would weigh about 600 pounds; decedent was ready to put the roller under it; that he was unable to lift it high enough to get the roller under it, and it slipped and grated decedent's toe. He also says that he lifted the box off decedent's toe and that the box did not hit decedent on his legs or body any place. There was testimony that thereafter decedent limped and was given other work to do. The straw boss learned of this accident and at supper time decedent took off his shoe and stocking and the straw boss looked at his foot; there was a little redness to the little toe and the one next to it, but no other evidence of an injury; decedent worked overtime until half past eight. When he arrived home about nine o'clock he was limping; he washed and had his supper, but was unable to get up from the table and had to be assisted to bed. Upon his clothing being removed it was found that the toes on his left foot were red, but they were not mashed; there was also a redness on his right leg, about four or five inches above the knee. He complained more about the leg than he did the toes. Over the objection of the defendant the plaintiff was permitted to introduce evidence of statements of decedent made at this time, and at later dates as to how the accident happened—that a box of steel fell on his right leg. We shall have occasion to presently refer to this testimony and will not now further detail it. The testimony also shows that decedent had always before this been a strong, healthy man, had never been sick. He did not return to work. It does not appear that there was any serious trouble with

the toes but the condition of the leg grew serious and plaintiff called a doctor. Later a doctor employed by defendant also called on him. The doctor produced by plaintiff and the one produced by defendant do not disagree upon any material element of the case. From the medical testimony it appears that the condition of decedent's leg resulted in a thrombosis or stoppage of the saphenous vein in the thigh by a blood clot, necessitating the removal of a section of that vein on June 20th; that he suffered a relapse on June 27th, and died the following day; that death was due to the lodgment of a blood clot in the vessels of the intestines; that the blood clot undoubtedly came from the condition originally developed in the saphenous vein; that the condition of the toe had nothing to do with it; and that the condition of the saphenous vein might have been produced either by a blow or infection from bacteria in the system. The industrial accident board found that deceased was struck in the right leg by the box of steel, receiving an accidental personal injury to his right thigh; that such injury was the proximate cause of his death and affirmed the award of the committee of arbitration awarding plaintiff $8.27 per week for a period of 300 weeks. To review this award of the board, this writ was allowed.

FELLOWS, J. (*after stating the facts*). As the board has found that the deceased was injured as stated by him at various times after the accident, and as much of this hearsay testimony is quoted at length in the opinion, and as the board has expressly held that at least some of it was admissible, we will first consider the question of whether statements of the deceased as to how the accident happened, made after the happening of the event, are admissible.

In the case of *Reck* v. *Whittlesberger*, 181 Mich. 463, we had the question of hearsay evidence before us and it was there said:

"The rule against hearsay evidence is more than a mere artificial technicality of law. It is founded on the experience, common knowledge, and common conduct of mankind. Its principles are generally understood and acted upon in any important business transaction or serious affair in life. In such matters men refuse to rely on rumor or what some one has heard others say, and demand the information at first hand."

And we there approved the following language from Boyd on Workmen's Compensation, p. 1123:

"The statements made by an injured man as to his bodily or mental feelings are admissible, but those made as to the cause of his illness are not to be received in evidence. The rule applies to statements made by a deceased workman to a fellow workman as to the cause of his injury."

In addition to the authorities there cited, see *Langley* v. *Reeve*, 3 B. W. C. C. 175; *Amys* v. *Barton*, 5 B. W. C. C. 117; *Wolsey* v. *Pethick Bros.*, 1 B. W. C. C. 411.; *Carroll* v. *Knickerbocker Ice Co.*, 218 N. Y. 435 (113 N. E. 507) ; *Chicago, etc., R. Co.* v. *Industrial Board of Illinois*, 274 Ill. 336 (113 N. E. 629). In the last cited case it was said:

"Declarations made by one injured, to his attending physician, are admissible in evidence when they relate to the part of his body injured, his suffering, symptoms, and the like, but not if they relate to the cause of the injury. (Citing authorities.) This rule is even more rigorously enforced as applied to lay witnesses."

The statements made by deceased to his family as to the accident he suffered were made at a place some distance away, several hours thereafter, were but the narration of past events, and were not a part of the res gestæ. *Merkle* v. *Township of Bennington*, 58, Mich. 156; *Dundas* v. *City of Lansing*, 75 Mich. 499; *Jones* v. *Village of Portland*, 88 Mich. 598.

The board held that the statements of deceased made to Dr. McDonnell as to the happening of the

accident were competent evidence and bound the defendant. They were put into the case not for the purpose of showing notice of the injury, but as substantive evidence of the facts of the injury. It is argued in support of this holding that Dr. McDonnell was the agent of the defendant, made a report to the company, which however is not in the record, and therefore not before us; and that decedent's claim as to how the accident happened is evidence that it did so happen, and *Reck* v. *Whittlesberger, supra,* and *Fitzgerald* v. *Lozier Motor Co.,* 187 Mich. 660, are cited to support this holding. In the instant case Dr. McDonnell was not a regularly retained physician of the defendant. He and other doctors were called to treat employees of defendant as occasion might arise; he was called upon to administer to employees, but not to represent the defendant in any way. It is apparent that the board has misconceived the holding of this court in these two cases. In the *Reck Case,* the employer reported to the board the cause and manner of the accident being that deceased was throwing wood in the furnace and a nail inflicted a gash in his hand. We there said:

"We think that such reports from the employer, where all sources of information are at his command when the reports are made, and he has had ample opportunity to satisfy himself of the facts, can properly be taken as an admission, and, at least, as *prima facie* evidence that such accident and injury occurred as reported."

It must be patent that the employer or the officer of a manufacturing company, who makes the report to the board, rarely, if ever, witnesses the accident. He obtains his information from others. It comes to him second hand. If, after making his investigation, he concludes that the accident happened in a certain way and so reports, it may be regarded as an admis-

sion, and therefore, some evidence before the board for its consideration. This was the situation in the *Reck Case* and this was the holding.

In the *Fitzgerald Case,* the foreman, whose duty it was to report accidents to his superior, reported that deceased scratched his right hand on manifold on top of the thumb joint. He had received his information from the injured employee. But he was the authorized agent of the company to investigate and make such report; by adopting the claim of the employee as his own report and version of the accident, the employee's claim became and was his report. Following the *Reck Case,* it was held receivable as an admission and together with other evidence was held to be sufficient to support the finding.

These two cases hold that where the employer or his authorized agent, whose duty it is to make report of accidents, who have the opportunity to investigate, makes a report as to the accident, such report is receivable as an admission, and as an admission may be sufficient to establish a *prima facie* case. It is unimportant how the employer procures his information. It may all be hearsay. It may come through several hands, from different sources; but when he or his authorized agent reports that the accident happened in a certain way, the report stating that it happened in that way is an admission and receivable as such. These cases go no farther. They do not make the claim of the injured employee as to how the accident happened evidence of the facts. It is only by the adoption of that claim by the employer or his authorized agent that it becomes an admission and receivable as such. In the instant case we have no such report, nor was Dr. McDonnell the agent of defendant for the purpose of making such report. The board was in error in holding that such hearsay evidence was receivable as competent evidence of the facts.

But we should not reverse the case for the admission of incompetent hearsay evidence. If there is competent evidence to sustain the finding, the case should be affirmed. *Reck* v. *Whittlesberger, supra.* In the consideration of these cases the rules which govern are well recognized. The burden of establishing a claim for compensation rests on those seeking the award. They are not required to establish their case by positive, direct evidence; in many cases that would be impossible; they may prove their case by circumstantial evidence as other cases are established. The board is the trier of the facts, and weighs and measures the conflicting testimony, medical as well as lay. *Deem* v. *Kalamazoo Paper Co.,* 189 Mich. 665; *Perdew* v. *Nufer Cedar Co.,* 201 Mich. 520. It is the province of the board to draw the legitimate inferences from the established facts and to weigh the probabilities from such established facts. *Wilson* v. *Phœnix Furniture Co.,* 201 Mich. 531. But the inferences drawn must be from established facts; inference may not be built upon inference, possibilities upon possibilities, or inferences drawn contrary to the established facts, contrary to the undisputed evidence. If an inference favorable to the applicant can only be arrived at by conjecture or speculation the applicant may not recover. So if there are two or more inferences equally consistent with the facts, arising out of the established facts, the applicant must fail. *McCoy* v. *Michigan Screw Co.,* 180 Mich. 454; *Draper* v. *Regents of University,* 195 Mich. 449; *Albaugh-Dover Co.* v. *Industrial Board,* 278 Ill. 179 (115 N. E. 834); *Curran* v. *Newark Gear Co.,* 37 N. J. L. J. 21; *Savoy Hotel Co.* v. *Industrial Board,* 279 Ill. 329 (116 N. E. 712); *Sanderson's Case,* 224 Mass. 558 (113 N. E. 355); *Carroll* v. *Knickerbocker Ice Co., supra; Burwash* **v.** *F. Leyland & Co.,* 5 B. W. C. C. 663.

In the instant case the only witness produced who

saw the accident on June 6th testified that the only part of the body of deceased struck by the box was his toes. There is nothing inconsistent or improbable about his testimony. It is in no way discredited save by the statements of the deceased, which were hearsay and improperly received in evidence. It is undisputed upon this record. No other witness testified in conflict with it, and the established facts are not inconsistent with it. Nor is the opinion evidence of the doctors inconsistent with it. As we have stated they were not out of accord. Their testimony clearly puts the cause of death without the pale of inferences and within the sphere of speculation and conjecture. Short excerpts from the testimony of both demonstrate this. Dr. Allen, plaintiff's witness, in answer to questions propounded by her counsel, testified:

"*Q.* I wish to ask, Doctor, if this man had told you nothing, and you had seen him in the condition he was in the first time that you saw him, and saw him in the condition the second time that you saw him, and examined him and found he was otherwise normal, and knew only these facts, what would your opinion have been as to the cause of that condition?

"*A.* I would naturally have to state that it was possibly an infectious thing rather than a traumatic thrombosis.

"*Q.* Could you have determined one way or the other?

"*A.* No. Absolutely no difference. It does not make any difference whether you get your inflammation from a blow to start with or whether you get it from the infection, the pathological process is identical."

Dr. McDonnell, defendant's witness, testified:

"*Q.* Then what did cause the thrombus at that particular location?

"*A.* That is impossible to say. That is impossible for any doctor to state; it may have been so many different things."

We therefore conclude that the testimony of the

statements of the deceased as to the happening of an accident to his thigh was hearsay; that it should not have been received or considered; that without it there is no evidence in the record in conflict with the testimony of the witness Trzienski; that there is no competent evidence to sustain the findings of the board and that the award should be vacated.

OSTRANDER, C. J., and STEERE, BROOKE, and STONE, JJ., concurred with FELLOWS, J.

MOORE, J. (*dissenting*). I think there was testimony upon which to base the finding of the industrial commission and that the case should be affirmed.

BIRD and KUHN, JJ., concurred with MOORE, J.