ORCHARD & WILHELM COMPANY, APPELLEE, V. HANNAH C. PETERSEN, ADMINISTRATRIX, APPELLANT.

FILED JUNE 29, 1934. No. 29208.

*Edward J. Dugan, Lawrence F. Welch* and *John A. McKenzie,* for appellant.

*Crossman, Munger & Barton* and *Varro H. Rhodes,* contra.

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, and PAINE, JJ., and CARTER and LIVINGSTON, District Judges.

GOOD, J.

Hannah C. Petersen (hereinafter referred to as claimant), widow of William R. Petersen, deceased, and administratrix of his estate, instituted this proceeding be-

fore the compensation commissioner, to recover from Orchard & Wilhelm Company (hereinafter referred to as the company) death benefits under the workmen's compensation law. The company denied that claimant's husband received an injury arising out of and in the course of his employment, alleged that he died from natural causes and not as a result of any accident, and that the action is barred because no claim for compensation was made by claimant within six months from her husband's death. The compensation commissioner made an award to claimant; the company appealed to the district court, where findings were made in favor of the company on each of the propositions, and award of compensation denied. Claimant has appealed.

For many years prior to February, 1933, Mr. Petersen had been employed by the company as a floor man in its wholesale store in Omaha. On the 9th of February, 1933, Petersen was informed that, because of business conditions, his services would be discontinued after the 28th day of February following. Apparently at the same time, he informed a representative of the company that he had a hernia and he was sent to a physician. It was deemed necessary that an operation should be performed, and Petersen desired his regular physician to perform the operation, to which the company assented. However, Petersen wore a truss and continued his work for the company until the close of February, 1933. The next day he entered a hospital and was operated upon for hernia. The operation appeared to be successful, and Mr. Petersen appeared to be progressing satisfactorily until the 11th day of March, when his breathing became labored, his lips and nails became cyanotic or blue, and he expired within a few moments.

It is claimant's contention that Petersen sustained an accidental injury from "pushing a truck loaded with linoleum up an incline in the store of the said Orchard & Wilhelm," in the course of his employment, causing the hernia, which, in turn, necessitated the operation, and

that death resulted because of the operation. To be more exact, it is claimant's contention that Petersen died from an embolism, and that the embolus was caused by the hernia operation.

The only evidence that Petersen sustained an accidental injury in the course of his employment is that contained in a first report made to the compensation commissioner by a Mr. Nestor, a "personnel director" for the company.

Claimant argues that, in an action for compensation, the report of an injury, made by an employer to the compensation commissioner, may be introduced in evidence, to establish a *prima facie* case and as an admission against interest of the employer, as to how, when and where the injury occurred. She cites and relies upon the following cases: *Northeast Oklahoma R. Co. v. State Industrial Commission,* 88 Okla. 146; *Jacque's Case,* 121 Me. 353; *Carroll's Case,* 225 Mass. 203; *Ross' Case,* 124 Me. 107; *Hege & Co. v. Tompkins,* 69 Ind. App. 273; *Reck v. Whittlesberger,* 181 Mich. 463; *Brown's Case,* 228 Mass. 31. Several of these cases do hold that such a report is in the nature of an admission against interest and may be sufficient to make a *prima facie* case, but none of them holds that such report is conclusive, and in all of the cases cited the findings of the compensation commissioner, or industrial board, as the case may be, have the force and effect of the verdict of a jury in a law action; while in this state compensation cases in this court are tried *de novo,* and this court is required to determine the facts from the evidence preserved in a bill of exceptions, independently of any findings or conclusion that may have been reached by the trial court. We think it may be conceded that such a report, in this state, may be sufficient to make a *prima facie* case, and, if there were no other evidence upon the subject, such a report may be sufficient to sustain a finding for the claimant. However, in this case, there is other evidence which tends to discredit the facts recited in the report.

Plaintiff's work for the company was principally upon

the sixth floor of the store and incidentally, and to a small extent, on the second floor. There are no inclined planes or runways either on the second floor or sixth floor, or on any other floor of the store save on the seventh floor, and the evidence shows that Petersen's work was that of a floor man; that he had no occasion, in the course of his employment, to go to the seventh floor, or to perform any work on that floor. This tends to negative the claim that Petersen was injured by pushing a truck load of linoleum up an incline. Moreover, it is significant that no other person in the store, where there are many employees, is shown to have any knowledge that Petersen had ever received any injury in the course of his employment except Mr. Nestor, who made the report to the compensation commissioner, or that Petersen ever performed any labor on the seventh floor. It is also fairly inferable from the record that the only source of Nestor's information was that obtained from Mr. Petersen. It is also significant that in an action by claimant against an insurance company, to recover for the death of her husband, she alleged in her petition as follows: "Plaintiff further alleges that the said William R. Petersen, on or about the 6th day of February, 1933, * * * received and sustained a hernia, caused by operating a heavily loaded wheelbarrow upon an inclined runway." Under the facts disclosed, we are of the opinion that the evidence will not sustain a finding that Petersen received an injury arising out of and in the course of his employment.

Two physicians testified as to the cause of Petersen's death. One was his attending physician and surgeon, who performed the operation. Another was the surgeon who performed an autopsy, or partial autopsy, after Petersen's death. Each of these doctors testified that in his opinion Petersen died from an embolism. Doctor N., who performed the hernia operation, testified that he was present and observed the autopsy, and that in his opinion Petersen's death was caused by an embolus in the coronary artery; while Doctor E., who performed the autopsy,

testified that there was no embolus in the heart or coronary artery; that there was none in the lungs; that he found no embolus, but that it was his opinion Petersen died from an embolus in the brain. However, the brain was not examined, and the cranial cavity was not opened. But Doctor E. based his opinion, that death was caused from embolism in the brain, on the symptoms which characterized the manner in which Petersen died. He further testified that in his opinion the embolus came from the hernia operation, and further that he had expected to find an embolus either in the heart or in the lungs and was surprised that it was not found. Apparently because the symptoms indicated death from embolism, he concluded that it must be in one of the vital organs and, therefore, was in the brain. Both doctors testified that embolism occasionally resulted from a surgical operation, but usually in such cases there was infection. Both doctors testified that there was absolutely no infection in the operative wound; that it was clean and healing nicely at the time of Petersen's death. Doctor N. also testified on cross-examination that embolism did not result from the hernia operation. Both doctors testified that embolism may result from other causes than a surgical operation.

From a consideration of this evidence, it seems that the actual cause of Petersen's death is a matter of speculation. Had the autopsy extended to an examination of the cranial cavity and had it disclosed an embolus in the brain, one point, at least, would have been cleared up, but even then it would be a matter of conjecture and speculation whether the embolus was caused by the hernia operation.

In this case it was incumbent upon the claimant to establish by a preponderance of the evidence, first, that Petersen sustained an accidental injury, arising out of and in the course of his employment; that such injury necessitated the operation; that the operation caused an embolus to be released into the blood stream, and that the embolus caused his death. We think the evidence is insufficient

to show either that Petersen received an accidental injury, arising out of and in the course of his employment, or that his death was caused by embolism, arising from the hernia operation.

It is unnecessary to consider other assignments of error. The findings of fact of the district court are in accordance with the evidence and require an affirmance of the judgment.

AFFIRMED.