PUTNAM v. BEECHLER.

1. WORKMEN'S COMPENSATION—PLAINTIFF'S BURDEN OF PROOF.
    In a proceeding to recover workmen's compensation the plaintiff
    has the burden of establishing that he sustained an accidental
    injury arising out of and in the course of his employment.

2. SAME—ACCIDENT—PROXIMATE CAUSE OF INJURY.
    In order to ascertain whether or not an employee has suffered an
    accidental injury it is first necessary to determine what was
    the proximate cause of the injury.

3. SAME—INFERENCES—ESTABLISHED FACTS.
    In proceedings to recover workmen's compensation it is the
    province of the department to draw legitimate inferences from
    established facts and to weigh the probabilities from such facts,
    but the inference drawn must be therefrom and not be built
    upon inference or possibilities, or contrary to established facts
    or to undisputed evidence.

4. SAME—INFERENCES—CONJECTURE.
    In proceedings to recover workmen's compensation if an inference
    favorable to applicant can only be arrived at by conjecture or
    speculation or if there are two or more inferences equally con-
    sistent with the facts and one of them is favorable to the
    employer, the applicant cannot recover.

5. SAME—EYEWITNESSES.
    It is not necessary that there be eyewitnesses to an accident in
    order that plaintiff recover an award of workmen's compensa-
    tion.

6. SAME—THEATER EMPLOYEE—WINDOW POSTERS—ACCIDENT—EVI-
    DENCE.
    Theater employee who was placing posters in a store window in
    which he had placed posters for over two years who received an
    injury while doing the work in the usual and ordinary manner
    and without the intervention of any untoward or accidental
    happening did not sustain an accidental injury within the mean-
    ing of the workmen's compensation act.

7. SAME—REVIEW OF RECORD.

Upon appeal from an award by the department of labor and industry, the Supreme Court does not judge the facts but confines itself to a review of the record to determine whether or not there is evidence supporting the award.

8. SAME—DISEASED CONDITION OF LEG—ACCIDENT.

In proceeding to recover workmen's compensation by theater employee who was placing posters in store window in the usual and ordinary manner whose leg "gave way" as he was about to raise himself up to tack the poster to an upper ledge, where there is no testimony from which an accident could logically and reasonably be inferred and testimony tends to indicate injury was due to preexisting diseased condition of leg, no recovery of compensation is permissible.

Appeal from Department of Labor and Industry. Submitted October 15, 1941. (Docket No. 54, Calendar No. 41,571.) Decided December 2, 1941.

Marcus L. Putnam presented his claim against Cash R. Beechler, employer, and Michigan Mutual Liability Company, insurer, for compensation for injuries. Award to plaintiff. Defendants appeal. Reversed.

*G. E. McArthur,* for plaintiff.

*L. J. Carey* and *Geo. J. Cooper,* for defendants.

STARR, J. This is an appeal by defendants from order and award of the department of labor and industry, entered December 18, 1940, granting plaintiff compensation of $18 per week for total disability, together with medical and hospital bills. Such award reversed an order of the deputy commissioner denying plaintiff compensation on the ground that "the proofs show an injury but fail to show the injury to be of accidental origin."

Plaintiff was employed by defendant Beechler as manager of a movie theater in Eaton Rapids. His duties included putting up theater advertising sheets or posters each week. On May 17, 1940, plaintiff went into the C. J. Moore implement store in Eaton Rapids intending to place a poster in the front window. He had been putting up posters in such store window for over two years. The window extended across the front of the store, with a wooden ledge or casing, four or five inches wide, located 27 inches above the floor. About six feet above the floor another wooden ledge extended across the window, and the top window frame was about two feet above such ledge.

Plaintiff intended to step up on the lower window ledge and tack a poster along the top frame, so that the poster would hang down in the window. He put his left foot on the lower ledge, grasped the second ledge with his left hand, and, as he attempted to "push and pull" himself up on the lower ledge, his right leg "suddenly gave way" and he fell down "in a heap." The tibia bone in his right leg was broken three or four inches below the knee. Plaintiff, the only witness in his behalf, on direct examination testified in part as follows:

"*Q.* And what were you doing at the time that this accident happened?

"*A.* I was attempting to step up on this window ledge, and pull myself up with this upper piece, you see, and stand up there and thumb tack these one-sheets up. That is the way we had always done it. * * *

"*Q.* * * * Well, now, what happened as you attempted to pull yourself up?

"*A.* Well, I just,—I don't know. I just went in a heap, and I had this sensation that you get when you break a bone.

"*Q.* You have had that sensation before, have you?

"*A.* Yes, I have.

"*Q.* Can you describe that sensation a little more?

"*A.* The nearest thing I can say is that to me, anyway, it was just like someone had a red hot knife, just cutting across the leg. I don't know whether that is the sensation that always exists with a broken bone, but that is the sensation that was there.

"*Q.* And did you collapse?

"*A.* I went right onto the floor just in a heap."

On cross-examination plaintiff testified:

"*Q.* And it had been your habit, or your custom, in putting this up once a week, to put your left foot, I believe, on this lower ledge, is that right?

"*A.* Yes, sir.

"*Q.* Your left hand up on the second ledge?

"*A.* That is right.

"*Q.* And then raise,—push yourself up with your right leg, is that it?

"*A.* Push and pull.

"*Q.* Push and pull. Then you would get on this ledge and thumb tack the one-sheet on?

"*A.* Yes, sir.

"*Q.* As you were doing this on this particular day, your right leg suddenly gave way?

"*A.* Yes, sir.

"*Q.* As you were attempting to push yourself up. You were doing that on this particular occasion just the same as you had always done it?

"*A.* Yes, sir.

"*Q.* The only thing unusual was the fact that your leg just gave way?

"*A.* Yes, sir.

"*Q.* Now, I believe that in the years past, you have had previous difficulties with your leg?

"*A.* I had it broken two years ago.

"*Q.* You had it broken two years ago?

"*A.* Well, about a year and a half ago.

"*Q.* You fell down, then, after your leg collapsed, is that right?

"*A.* Well, now, I would hate to take an oath on which happened first. I went in a heap there.

"*Q.* You went in a heap there?

"*A.* Yes, sir, that is right.

"*Q.* But it was your leg snapping first that let you down?

"*A.* I suppose that is right, yes, sir.

"*Q.* You didn't slip or anything like that?

"*A.* I couldn't answer that.

"*Q.* You couldn't answer that?

"*A.* I don't know.

"*Q.* All you know is that as you were attempting to raise yourself, you just collapsed?

"*A.* That is right."

Defendants contend that plaintiff did not sustain an accidental injury arising out of and in the course of his employment, and that his injury resulted from a diseased condition of his leg bone.

Defendants called Dr. Carl S. Davenport, who had X-rayed plaintiff's leg in December, 1938, following his first injury and had also X-rayed plaintiff's leg in August, 1940, following the injury in question. Dr. Davenport testified regarding the fracture of plaintiff's leg in 1938 as follows:

"Q. Doctor, did you have occasion to take X-rays of Marcus Putnam's leg several years ago, when he had had a fracture of the leg?

"*A.* I did. * * *

"Q. Doctor, will you tell us what Exhibit No. 2 reveals? * * *

"*A.* It shows a fracture of the tibia approximately three inches below the knee. The tibia, from the knee to,—oh, down here for a distance of about 10 inches, shows quite extensive alteration of the bone structure and architecture, by disease process.

"*Q.* This disease process which extends downward from the knee, on the tibia, about eight or nine inches, Doctor, is that in any way related to that fracture which is there? I mean did the fracture cause this diseased process?

"*A.* I feel not. I feel that the bone disease was a preexisting process.

"*Q.* Is that diseased condition quite obvious in the X-ray plate?

"*A.* Very evident, yes.

"*Q.* That shows a considerable thickening of the bone,—of the tibia, itself, doesn't it?

"*A.* It shows a widening, as if by expansion of the process, growing very thin, or enlarging very thin.

"*Q.* Now, that fracture line of the break, is that practically straight across?

"*A.* Almost a transverse type of fracture, without displacement."

Dr. Davenport also testified regarding plaintiff's injury, being considered in this case, as follows:

"*Q.* Now, Doctor, I show you Exhibits 4 and 5, and ask you to identify those?

"*A.* Those are films of the same area, same leg of the same patient, Marcus Putnam, taken August 1, 1940. * * *

"*Q.* Doctor, will you tell us what Exhibits 4 and 5 show?

"*A.* I mentioned that these were of the same area of the same leg. They show the same general diseased process of the tibia, with practically no alteration in its appearance, but on these films there is another fracture line shown, approximately ¾ of an inch lower than the one shown on the earlier film, roughly in the same direction,—a transverse fracture, slightly greater obliquity than was shown on the first fracture.

"*Q*. Then you say, Doctor, that the fracture shown in Exhibits 4 and 5 is not the same fracture shown in Exhibits 2 and 3?

"*A*. I believe it is an entirely separate fracture.

"*Q*. It is also in a different area, is it not,— slightly lower?

"*A*. About ¾ of an inch lower level.

"*Q*. And at the angle—

"*A*. Slightly different angle, but— .

"*Q*. In your opinion, Doctor, is this second fracture,—that is, the fracture that is shown in the Exhibits 4 and 5, in any way associated with the fracture shown in Exhibits 2 and 3?

"*A*. I can see no relationship.

"*Q*. Now, Doctor, what in your opinion could cause a fracture such as you saw in Exhibits 4 and 5, taking into consideration the condition of the bone?

"*A*. A fracture is always produced by stress,— force.

"*Q*. Well, in the,—the history that has been given here, Doctor, in that this man had placed his left foot on a ledge 27 inches from the floor, that he put his left hand on another ledge that was four feet above the first ledge, or the ledge on which he had his left foot, and that he was both pulling upwards with his left hand and pressing downwards with the right leg, when his right leg suddenly collapsed. Now, could the fracture that you see in Exhibits 4 and 5 be the result of such an occurrence?

"*A*. I believe so.

"*Q*. Would it be necessary, Doctor, where you have a bone condition such as is shown in these X-rays, to have anything unusual occur to cause such a fracture?

"*A*. Not unusual. It is merely the degree of stress or force applied in relation to the strength of the bone. I believe this bone is weakened, and without any means of measuring the stress, it is just the relationship between those two things.

"*Q.* Well, do I understand, Doctor, that because of the diseased condition of this bone, that it is more susceptible to fracture than normal bone?

"*A.* I believe so.

"*Q.* And with a diseased bone such as this is, it is liable to break at any time, is that it,—as I understand it?

"*A.* I would be afraid that it might."

The department, in its opinion reversing the deputy and awarding compensation to plaintiff, stated in part:

"We think that under the decisions of the court the occurrence of the accident raises the natural inference that it arose out of the employment. * * *

"We think to find the weakened bone caused the fall is conjectural."

The department, in its opinion, and plaintiff's counsel, in his brief, rely upon the cases of *Rogers* v. *Ford Motor Co.,* 287 Mich. 104, and *De Mann* v. *Hydraulic Engineering Co.,* 192 Mich. 594, in which the employees were found dead and also the case of *Dulyea* v. *Shaw-Walker Co.,* 292 Mich. 570, in which the employee was found unconscious and died without regaining consciousness. In such cases there was no testimony showing the circumstances under which the fatal injuries occurred; and they can all be distinguished from the instant case where plaintiff's own testimony fully explains the circumstances of his injury.

In *Rogers* v. *Ford Motor Co., supra,* the employee was found dead in the plant and an autopsy showed death was caused by cerebral hemorrhage resulting from a fractured skull. The autopsy also indicated that the employee had three serious heart ailments which could have caused a heart attack with a consequent fall and injury. There was no evidence showing the circumstances under which the employee

was injured. The award of compensation was affirmed by an equally divided court. In writing for affirmance Mr. Justice BUTZEL said (p. 108):

"In this case defendant made no effort to show the circumstances under which decedent was injured and we believe that the department was warranted, upon the established facts, in drawing the inference that decedent met with a compensable accident."

Mr. Justice WIEST, writing for reversal of award, said:

"The department justified the inference of accidental injury on the failure of defendant to produce witnesses showing how the accident occurred.

"This man was suffering from three ailments, any one of which might prove fatal and throw him to the floor. * * *

"I am not prepared to hold that the burden is on the defendant to disprove the alleged accidental injury but adhere to the rule that the burden is on the plaintiff to show an accidental injury.

"I am of the opinion that an affirmative finding of an accidental injury cannot be based upon an inference as was done in this case."

Plaintiff's counsel also cites the case of *Watson* v. *Publix Riviera Theatre*, 255 Mich. 115, in which plaintiff, an actor, as part of his duties, was turning somersaults on a bounding table when his leg gave way and he fell injuring his leg and pelvic bones. We affirmed award of compensation for accidental injury. The case contained no mention of plaintiff's being ill or having any diseased condition of the leg which might have been the proximate cause of the injury. Such case is readily distinguishable from the present case in which it could reasonably be inferred that the diseased condition of plaintiff's leg bone caused his injury.

The burden was upon plaintiff to establish that he sustained an accidental injury arising out of and in the course of his employment. *Ginsberg* v. *Burroughs Adding Machine Co.*, 204 Mich. 130; *Chaudier* v. *Stearns & Culver Lumber Co.*, 206 Mich. 433 (5 A. L. R. 1673); *Dulyea* v. *Shaw-Walker Co., supra; Clifton* v. *Chrysler Corporation,* 287 Mich. 87; *Rogers* v. *Ford Motor Co., supra.*

To answer the question as to whether or not plaintiff sustained an accidental injury, we must first determine the proximate cause of the injury; that is, did the tibia bone in plaintiff's right leg break by reason of an accident, or did it break because of the diseased condition of the bone?

Plaintiff's testimony above quoted does not indicate that he "slipped" or that any unusual, accidental or fortuitous happening occurred. His leg just "gave way," and then he fell down "in a heap." The injury apparently occurred before he fell and caused him to fall.

As there is no definite testimony that an accident occurred, we are confronted with two possible inferences: (1) an inference that an accident occurred causing the injury; or (2) an inference that the diseased condition of the leg bone caused the injury.

In the case of *Ginsberg* v. *Burroughs Adding Machine Co., supra,* p. 137, Mr. Justice FELLOWS said:

"It is the province of the board* to draw the legitimate inferences from the established facts and to weigh the probabilities from such established facts. *Wilson* v. *Phoenix Furniture Co.,* 201 Mich. 531. But the inferences drawn must be from established facts; inference may not be built upon

---

* The powers and duties of the industrial accident board, here referred to, have been transferred to the department of labor and industry and the board abolished. See 2 Comp. Laws 1929, § 8312 (Stat. Ann. § 17.3).—REPORTER.

inference, possibilities upon possibilities, or inferences drawn contrary to the established facts, contrary to the undisputed evidence. If an inference favorable to the applicant can only be arrived at by conjecture or speculation the applicant may not recover. So if there are two or more inferences equally consistent with the facts, arising out of the established facts, the applicant must fail. *McCoy* v. *Michigan Screw Co.*, 180 Mich. 454 (L. R. A. 1916 A, 323, 5 N. C. C. A. 455); *Draper* v. *Regents of University*, 195 Mich. 449."

In *Dulyea* v. *Shaw-Walker Co., supra*, this court said:

"We recognize the rule that the burden of establishing a claim for compensation rests upon those seeking an award; that in order that plaintiff may recover an award it is not necessary that there be eyewitnesses to the accident; and that if an inference favorable to the applicant can only be arrived at by conjecture or speculation the applicant cannot recover. It is also the rule that if there are two or more inferences equally consistent with the established facts, the applicant must fail."

In *Pucilowski* v. *Packard Motor Car Co.*, 278 Mich. 240, the employee, while walking, suddenly threw his head upward and fell backward striking his head on a cement floor and receiving a fractured skull, from which he died a few hours later. The question was whether the proximate cause of the fall was an accident or an epileptic seizure. In reversing an award of compensation, Mr. Justice WIEST said:

"If the fall was not occasioned by an accident or fortuitous event the result thereof was not compensable. * * *

"The cause of death was undoubtedly a fractured skull, but was the proximate cause of the fall an accident or an epileptic seizure? * * * What caused him to fall? He did not slip. * * * In such case there can be no weighing of probabilities

or a drawing of reasonable inferences as to the proximate cause."

Plaintiff, in the regular course of his employment, was placing a poster in the same store window in which he had placed posters for over two years, and his injury occurred while he was doing such work in the usual and ordinary manner and without the intervention of any untoward or accidental happening. That, under such circumstances, plaintiff did not sustain an accidental injury is well settled by many decisions of this court. *Clifton* v. *Chrysler Corporation, supra; Waites* v. *Briggs Manfg. Co.,* 280 Mich. 185; *Williams* v. *National Cash Register Co.,* 272 Mich. 553; *Hooks* v. *City of Wyandotte,* 278 Mich. 232; *Marlowe* v. *Huron Mountain Club,* 271 Mich. 107; *Swedberg* v. *Standard Oil Co.,* 271 Mich. 184.

In *Swedberg* v. *Standard Oil Co., supra,* the employee rolled five barrels of oil, weighing about 480 pounds each, upon a truck and upended them. Such work was within his ordinary duties and was "performed in an ordinary way and without unusual features." After loading the barrels the employee became ill and died a few days later from intestinal hemorrhage. The testimony indicated at least three possible causes for the hemorrhage: "straining at stool, handling the oil barrels in the regular way, or sudden jar from slipping." A witness who assisted the employee in loading the barrels testified "that neither Swedberg nor any of the barrels slipped." Mr. Justice FEAD, writing for reversal of award by the department, said:

"If the hemorrhage was caused by Swedberg handling the oil barrels in the ordinary way, there was no accident. *Sinkiewicz* v. *Lee & Cady,* 254 Mich. 218; *Kutschmar* v. *Briggs Manfg. Co.,* 197 Mich. 146 (L. R. A. 1918 B, 1133)."

Upon appeal from an award by the department, we do not judge the facts but confine ourselves to a review of the record to determine whether or not there is evidence supporting the award. *Neumeier* v. *City of Menominee,* 293 Mich. 646; *Lynch* v. *R. D. Baker Construction Co.,* 297 Mich. 1.

In the case at hand there is no testimony from which an accident could logically and reasonably be inferred; in fact, the testimony rather negatives the inference of an accident.

Against the inference that plaintiff sustained an accidental injury, it might with equal reasonableness be argued that the diseased condition of his leg bone raises an inference that such condition was the proximate cause of his injury. In *Chaudier* v. *Stearns & Culver Lumber Co., supra,* p. 442, we said:

"Where two inferences equally consistent with the facts arise out of established facts, one involving liability on the part of the employer under the act and the other relieving him from liability, the applicant must fail."

See, also, *Ginsberg* v. *Burroughs Adding Machine Co., supra; Dulyea* v. *Shaw-Walker Co., supra; Draper* v. *Regents of University, supra; McCoy* v. *Michigan Screw Co., supra.*

We may not indulge in conjecture or speculation to infer that plaintiff sustained an accidental injury when the testimony as to the circumstances of the injury tends to indicate otherwise.

The award finds no support in the evidence.

The award is accordingly vacated, with costs to defendant.

Sharpe, C. J., and Bushnell, Boyles, Chandler, North, Wiest, and Butzel, JJ., concurred.