### HANNA *v.* MICHIGAN STEEL CASTINGS CO.

1. MASTER AND SERVANT—PERSONAL INJURIES—LIABILITY OF MASTER.

   In proceedings under the workmen's compensation act, where the employee was injured by a piece of flying board while operating a buzz saw, said injury causing his death, the employer is liable, although the source of the board was unknown.

2. SAME — WITNESSES — EVIDENCE — MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED.

   Testimony by the foreman that he had instructed deceased not to operate any of the saws was inadmissible under section 12553, 3 Comp. Laws 1915, being equally within the knowledge of deceased.

3. SAME—EVIDENCE—STATEMENTS OF INJURED TO PHYSICIAN.

   Statements of deceased to the doctor as to how he was hurt were inadmissible.

4. SAME—EVIDENCE—BASIS OF AWARD—REVIEW.
   Where it cannot be said that there was no testimony upon which to base the award of the board, and its finding that deceased's injuries were the proximate cause of pneumonia, which caused his death, this court will not interfere with the award.

Certiorari to Industrial Accident Board. Submitted October 16, 1918. (Docket No. 78.) Decided December 27, 1918.

Barbara Hanna presented her claim for compensation against the Michigan Steel Castings Company for the accidental death of her husband in defendant's employ. From an order awarding compensation, defendant and the Michigan Workmen's Compensation Mutual Insurance Company, insurer, bring certiorari. Affirmed.

*Beaumont, Smith & Harris,* for appellants.

*Monaghan, Monaghan, O'Brien & Crowley,* for appellee.

MOORE, J. Certiorari to the industrial accident board to review its allowance of the plaintiff's claim as the widow of Alexander Hanna who was in the employ of the Michigan Steel Castings Company, and who was injured September 14, 1917, and who died on September 18th. It was the claim of the widow, and the industrial accident board so found, that the death was the result of the injury.

In the brief of counsel for the appellants the discussion is under the following heads:

1. There can be no recovery if Hanna was injured by a board flying from an unknown source.

2. There can be no recovery if Hanna was injured by a board he was attempting to cut on the saw.

*a.* Because as a matter of law the accident did not occur in the course of the employment of Alexander Hanna by the Michigan Steel Castings Company.

*b.* Because as a matter of law the accident did not arise out of the employment of Alexander Hanna by the Michigan Steel Castings Company.

*c.* Because as a matter of law Alexander Hanna was injured by reason of his intentional and wilful misconduct.

*d.* Because the accident was not the proximate cause of the death of Alexander Hanna.

Each of these propositions is discussed at great length by counsel and their conclusion is that this court should reverse the order of the industrial accident board, and hold that the defendants are not liable to plaintiff for the death of Alexander Hanna.

1. As to the first of these propositions there can be no possible doubt that Mr. Hanna was at work for the defendant company in some capacity, the company claims as a cleaner which did not call upon him to use any buzz saw. His widow claims he was at work as a carpenter. It was while he was engaged at work for the company, and because of that employment that he was injured and if as a result of the injury he died, it is difficult to escape the conclusion that liability followed.

2. We shall not attempt to follow the discussion of each subdivision under this head but will attempt to state the claims of the respective parties, what is shown by the record and our conclusions.

Mr. Hanna at the time of the accident had been employed by the defendant six months or more. He was 53 years of age. It is the claim of his widow that his work called upon him to push boards against a circular saw for the purpose of sawing them, and that one of them was thrown against him with great violence, hurting his hand and chest, and that as a result of his injuries his death followed.

It is the claim of the defendant that Mr. Hanna was employed as a cleaner and that no part of his duty required him to use the buzz saw, and that if he did

so that he was violating a positive order, and that he was guilty of intentional and wilful misconduct. It is the further claim that the only injury Mr. Hanna received·was to his hand and that he died of pneumonia, to which the injury he received did not at all contribute, and that the court should say as a matter of law that the injury was not the proximate cause of his death. The claim that Mr. Hanna was guilty of intentional and wilful misconduct is based upon the testimony of the foreman; we quote some of it:

"*Q.* State whether or not you had ever said anything to Mr. Hanna about operating or not operating any of the saws in your department.

"*Mr. Crowley:* I object to that testimony.

"*Mr. Zierleyn:* I think it is very proper, Mr. Crowley.

"*Mr. Crowley:* I desire that my objections stand as a matter of record.

"*Mr. Zierleyn:* Answer the question.

"*A.* I took him off the carpenter work because I did not think his eyesight was good enough for it, he had to put glasses on for it, and I told him if he would not keep off the saw I would have to fire him, and not only told him that but I told his son, too."

Mr. Hanna knew what conversation he had with the foreman upon that subject. He is not here to give his version. Such a contingency has been guarded against in section 12553, 3 Comp. Laws 1915. The language of the statute is not ambiguous as a reference to it will show. It has often been construed by this court as is shown by the many cases cited in the notes to section 12553. See, also,.the case of *Horn* v. *Arnett*, 91 N. J. Law, 110 (102 Atl. 366). The testimony of the foreman should not have been received. With it eliminated there is nothing to indicate that Mr. Hanna was warned not to use the saw.

It is said that the case presented by the plaintiff when the improper evidence is eliminated, must be determined as a question of law in favor of the de-

fendant. This makes it necessary to give a résumé of the testimony most favorable to the plaintiff. After the accident the company made a first report to the accident board in which it was said: "Occupation of employee carpenter." "Date of accident September 14, 1917." "Nature and cause of injury bruised left hand." A second report was made September 19, in which the following appears:

"Place of accident in detail, Carpenter shop. Cause and manner of accident, Was cutting wood for wedges. In taking pieces from the saw one piece caught and struck him on the joint of the first finger of left hand. This finger was off at joint. It jammed stump of finger and bruised it."

Against the objection of defendant Mr. Hanna's doctor was allowed to testify:

"Why he said that he had received it at a machine sawing wood. A piece of wood flew from the machine and struck him across the chest."

In his testimony appears the following:

"Q. Do you at this time lay any stress upon the injury to the hand, or the injury to the chest or both?

"A. Yes I do on the injury to the chest. The hand was simply an abrasion of the hand that was ceptic, but I do not believe it had—did not have any factor towards causing his death.

"Q. It was the alleged injury to the chest which was the factor that finally resulted in his death in your opinion?

"A. Resulted in pneumonia, yes.

"Q. In other words the injury to the chest was the thing that caused the pneumonia in your opinion?

"A. Yes. * * *

"Q. The question is this, perhaps it would be more simple to say it in this way: In your opinion the cause of pneumonia was the blow on the chest?

"A. Yes, sir. * * *

"Q. And the pneumonia caused the death?

"A. Yes, sir. * * * The man was at that time delirious and he was carrying a tremendously high

temperature and rapid pulse and I thought there was a septic condition going on at that time. The man at the first time I seen him, I would not have taken anything he said to me anyway, because he was not in his right mind, he was delirious. So the next time I seen him I went into the matter closer and I found the hand was not the entire cause of the pneumonia but the chest had been injured.

"*Q.* Would the infection in any way superinduce the pneumonia?

"*A.* I do not think in this case.

"*Q.* Could it contribute to the cause of death?

"*A.* Yes, perhaps by having an embolus leave the wound in the hand and cause an infarction in the hand, that would probably cause pneumonia but the *post mortem* showed that the pneumonia was of too large an area for embolic pneumonia.

"*Mr. Crowley:* So that in your judgment, doctor, I understand you now that the blow on the chest caused this traumatic condition.

"*A.* Yes, I made the diagnosis of traumatic pneumonia caused by the concussion of the board striking the chest."

A witness who was at work about 50 feet away from Mr. Hanna testified the latter was cutting a piece of wood on the saw.

"*Q.* What kind of a piece of wood did he have at the saw?

"*A.* It was a piece of pine about 18 inches long.

"*Q.* How wide or how thick was it?

"*A.* Well, when I seen it it was in two pieces, I only seen one piece of it and it was about five inches wide.

"*Q.* About five inches wide. You don't know what he was going to saw that for do you?

"*A.* No.

"*Q.* What was the first notice—what was the first you noticed with respect to this accident?

"*A.* I looked up and I seen him holding his hand to his side.

"*Q.* Was he holding his hand to his right side?

"*A.* Yes. * * *

"*Q.* Now, did you see this piece of wood that he was working with after that?

"*A.* Yes, sir.

"*Q.* Did you notice anything peculiar about the wood?

"*A.* It was broken that is all.

"*Q.* Did you notice any links of a chain in the wood?

"*A.* Yes.

"*Q.* What kind of chain was that?

"*A.* I think it was a kind of four-cornered piece.

"*Q.* What kind of chain was it, a watch chain?

"*A.* A watch chain, yes. * * *

"*Q.* Where was the rest of the chain?

"*A.* In his pocket.

"*Q.* Which pocket?

"*A.* Why, I think it was the vest pocket.

"*Q.* Vest?

"*A.* The vest pocket. * * *

"*Q.* What caused you to look up and notice what was happening at that saw?

"*A.* When I heard that piece fly over the saw.

"*Q.* When you heard the piece of wood fly over the saw?

"*A.* Yes.

"*Q.* Did it strike the saw?

"*A.* Yes, it struck the saw.

"*Q.* How do you know it struck the saw?

"*A.* Why, it would not have went back otherwise.

"*Q.* I assume then that it made a noise?

"*A.* Yes.

"*Q.* And you heard that and glanced up?

"*A.* Yes.

"*Q.* When you first glanced up what was Mr. Hanna doing?

"*A.* He was holding his two hands on his left side.

"*Q.* On his left side?

"*A.* Yes."

The piece of wood after it struck Mr. Hanna flew 10 or 12 feet down an open stairway and hit Mr. Thomas who was coming up the stairs, knocking him down. The record shows that part of the duties of a carpenter are to make molding flasks and in doing so that the carpenter would use a circular saw in preparing some of the pieces.

Mrs. Hanna testified as to what happened on the evening of the accident, in part as follows:

"*A.* Well, the usual time he got home about a quarter to six to the best of my knowledge.

"*Q.* What condition was he in when he arrived home?

"*A.* Well, his hand was terribly swollen and very much inflamed and he said he was very weary and complained terribly of his breast.

"*Q.* Did you examine his hand?

"*A.* Yes, sir, I was ordered by first aid to bathe it in hot water. I told him my best judgment called for cold water, but he said no, he was told at the hospital, hot water.

"*Q.* Did you make an examination of his breast?

"*A.* Yes, sir, I did.

"*Q.* What did you notice particularly about his chest?

"*A.* There was a very red place on his chest.

"*Q.* Where was that?

"*A.* On his chest, as near as I can tell you, over his lungs."

It is urged that what Mr. Hanna told the doctor about how he was hurt was improperly admitted. We think this was so under the case of *Ginsberg* v. *Burroughs Adding Machine Co., ante,* 130.

But with this testimony omitted we think it cannot be said there was no testimony upon which to base the award of the industrial accident board and their finding that the injuries to Mr. Hanna were the proximate cause of his death. Under such circumstances this court will not interfere. See *Reck* v. *Whittlesberger,* 181 Mich. 463; *Papinaw* v. *Railway Co.,* 189 Mich. 441; *Vogeley* v. *Detroit Lumber Co.,* 196 Mich. 516.

The award is affirmed, with costs to the plaintiff.

OSTRANDER, C. J., and BIRD, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.