ZOLADTZ *v.* DETROIT AUTO SPECIALTY CO.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—WITNESSES—MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED.
  In proceedings under the workmen's compensation act for the death of plaintiffs' husband and father in defendant's employ, testimony by the foreman that deceased was disobeying instructions at the time he was hurt was inadmissible under section 12553, 3 Comp. Laws 1915, being equally within the knowledge of deceased.

2. SAME—COURSE OF EMPLOYMENT—REVIEW.
  Where the testimony showed that deceased, a metal polisher, was injured while attempting to put a belt on a pulley with a stick, *held*, sufficient to sustain a finding that the accident arose out of and in the course of his employment.

Authorities passing on the question as to what injuries "arise out of and in the course" of the employment are collated in notes in L. R. A. 1916A, 40 and 232; L. R. A. 1917D, 114.

3. Same—Provisions of Award to Dependents—Widow—Minor Children.

> Under section 5436, 2 Comp. Laws 1915, the award of the industrial accident board for the death of a husband and father properly provided that the payments should be made to the widow during her life, and at her death, if any remained unpaid, then to the living minor children in equal shares.

Certiorari to Industrial Accident Board. Submitted April 23, 1919. (Docket No. 89.) Decided May 29, 1919.

Mary Zoladtz and others presented a claim for compensation against the Detroit Auto Specialty Company for the accidental death of plaintiffs' decedent in defendant's employ. From an order awarding compensation, defendant and the General Accident, Fire and Life Assurance Corporation, Limited, insurer, bring certiorari. Affirmed.

*Kerr & Lacey,* for appellants.

*Edward Pokorney,* for appellees.

Moore, J. Mary Zoladtz is the widow of Peter Zoladtz. The other claimants are his small children. Mr. Zoladtz was at work for the defendant as a metal polisher and received injuries which resulted in his death. The accident board awarded to Mrs. Zoladtz $7.79 per week for a period of 300 weeks from the date of the death of her husband, and in case of her death before all the compensation payable in the case has been paid, the unpaid compensation shall be paid to the other claimants then living, in equal shares. This is certiorari to review the award of the accident board.

The first assignment of error is:

"The industrial accident board erred in ruling that

the personal injury sustained by Peter Zoladtz arose out of and in the course of his employment."

This assignment is based upon the contention that Mr. Zoladtz was disobeying instructions when he was hurt. This was sought to be shown by the testimony of the foreman. This testimony was received over the objection that it was against the statute as Mr. Zoladtz could not give his version of the conversation. We think the testimony was incompetent. *Hanna* v. *Michigan Steel Castings Co.*, 204 Mich. 139. With this testimony eliminated it is not shown that Mr. Zoladtz was violating any instruction or any rule to which his attention had been called. We quote from the testimony:

"*Q.* Do you know a fellow up there by the name of Charlie, he is a machinist?

"*A.* The one that puts on belts?

"*Q.* Yes.

"*A.* Yes.

"*Q.* How many times have you seen Charlie put on the belt?

"*A.* After that accident I saw him that he put on the belt two times.

"*Q.* Who is Charlie up there? What does he do?

"*A.* He is the man that when a drill breaks on the machine he takes it over on an electric drill—I take it and he repairs it. If any belt breaks it is taken to him and he repairs the belt.

"*Q.* Has he got a room there where he works?

"*A.* Yes, he works in the basement.

"*Q.* Ever been down there?

"*A.* Yes, I was there a couple of times.

"*Q.* Did anybody say anything to you with reference to what you should do if your machine broke?

"*A.* No, I took the drill myself down and he fixed it.

"*Q.* How do you know where to take it?

"*A.* The man that used to work with me, Steve, he told me where to bring it.

"*Q.* You take it down to Charlie because somebody told you to take it there, is that right?

"*A.* Yes.

"*Q.* And when the belt broke you took that down to Charlie?

"*A.* Yes.

"*Q.* That was Charlie's job, wasn't it?

"*A.* Sure, Charlie's work.

"*Q.* When anything broke there in the shop they took it to Charlie, is that right?

"*A.* Yes.    *    *    *

"*Q.* Did you see Peter trying to put the belt on the wheel?

"*A.* Yes.

"*Q.* Just tell us what you saw him do, what did you see Peter do?

"*A.* The first thing the afternoon he started to work, in the afternoon.

"*Q.* On the polishing machine?

"*A.* On the polishing machine. He went to put the belt on, the belt broke and dropped on the floor.

"*Q.* Between one and two o'clock?

"*A.* Between one and two o'clock, something like that, I couldn't tell for sure.

"*Q.* Where?

"*A.* After that he go—

"*Q.* He took the belt to Charlie?

"*A.* He went to the cellar.

"*Q.* All right.

"*Mr. Lacey:* He went to the cellar you said?

"*A.* Yes. I don't know for sure what he got there for.

"*Q.* Did you see him when he came back?

"*A.* Yes, he came back.

"*Q.* Was the belt fixed when he came back?

"*A.* The belt fixed.

"*Q.* The belt was fixed?

"*A.* Yes.

"*Q.* Did Peter have the belt with him when he came back from the cellar?

"*A.* He came back with the belt from the cellar.

"*Q.* With the belt?

"*A.* He hold it in his own hands.

"*Q.* You mean the belt was in his hands?

"*A.* Yes.

"*Q.* Then what did you see Peter try to do?

"*A.* After that he put that belt in the machine with

a piece of board. I don't know how he figured with the piece of board.

"Q. What was he trying to do?

"A. It was about four inches long.

"Q. How wide?

"A. About an inch.

"Q. Thick?

"A. Yes.

"Q. Now stand up and just show us what was Peter doing with the board.

"A. Well he took the board and put—he wanted to put the belt on the wheel on that pulley. After the pulley—must be the pulley—must be the spokes, then he get the pulley here, and that stick, when the stick hit Peter right here (indicating).

"Q. You mean in the stomach?

"A. Yes."

We do not think it can be said that there is no testimony that the accident did not arise out of and in the course of the employment of Mr. Zoladtz. See *Rayner* v. *Sligh Furniture Co.,* 180 Mich. 168 (L. R. A. 1916A, 22, Ann. Cas. 1916A, 386) ; *Reck* v. *Whittlesberger,* 181 Mich. 463 (L. R. A. 1916C, 771) ; *Papinaw* v. *Railway Co.,* 189 Mich. 441; *Vogeley* v. *Detroit Lumber Co.,* 196 Mich. 516; *Hanna* v. *Michigan Steel Castings Co.,* 204 Mich. 139.

Appellant's second assignment of error is as follows:

"The industrial accident board erred in the entry of its order in which they held that compensation should be paid to Mary Zoladtz 'at the rate of seven dollars and seventy-nine cents per week for a period of three hundred weeks from and after May 10, 1917, but said award is hereby modified and amended so as to provide that in case of the death of Mary Zoladtz before all the compensation payable in this case shall have been paid then and in such case all unpaid compensation shall be paid to the said above mentioned children or to any of them, who are then living in equal shares.' "

In the findings of the industrial accident board is the following:

"The proof shows that the deceased left four children, the issue of himself and the applicant, whose names and ages are as follows: Nellie Jones Zoladtz, aged 12 years, George Jones Zoladtz, aged 7 years, Stanilaus Zoladtz, aged 4 years, Joe Zoladtz, aged 17 months. These four children were just as dependent upon the deceased as their mother was. By agreement of the attorneys for the respective parties the title of this case was amended so as to make the children as well as their mother applicants. The compensation will be paid to the mother, but should her death occur before it is all paid any unpaid balance will be paid to any of the above named children then surviving in equal shares."

Upon this record the award as made cannot be disturbed. See section 5436, 2 Comp. Laws 1915, and especially subdivision *c*.

The award is affirmed with costs to the appellee.

BIRD, C. J., and OSTRANDER, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.