## ATKINSON *v.* HANSON.

1. WORKMEN'S COMPENSATION—AUTOMOBILE SALESMAN—ACCIDENT WHILE DEMONSTRATING CAR TO PROSPECT—FINDING OF DEPARTMENT—EVIDENCE.

    Finding of department of labor and industry that plaintiff, an automobile salesman who had no particular hours of work and was on duty whenever he wished to demonstrate a car, was demonstrating a car to a prospective purchaser when accident occurred *held,* supported by testimony of both plaintiff and prospective purchaser showing plaintiff had been trying to sell the prospect a car, that conversation relative to deal was had while a third person drove the demonstrator to a nearby town in the early morning, and that prospect did buy a car from plaintiff's employer a few weeks later.

2. SAME—SUPREME COURT—EVIDENCE.

    On appeal in the nature of certiorari from an award of compensation by the department of labor and industry, it is the duty of the Supreme Court not to weigh the evidence but to affirm a finding of fact if there is any evidence upon which the department could make a finding.

CHANDLER and WIEST, JJ., dissenting.

Appeal from Department of Labor and Industry. Submitted January 3, 1940. (Docket No. 50, Calendar No. 40,891.) Decided April 1, 1940.

Alex Atkinson presented his claim against Alfred Hanson, employer, and State Accident Fund, insurer, for compensation for injuries sustained while in defendant's employ. Award to plaintiff. Defendants appeal. Affirmed.

*Charles E. Moore,* for plaintiff.

*Roy Andrus,* for defendants.

*Kelley, Sessions, Warner & Eger, amici curiae.*

SHARPE, J. I am not in accord with the view of Mr. Justice CHANDLER. The only question presented for review is whether there is competent evidence to sustain the finding of the department of labor and industry. The department found, ''The uncontradicted testimony of plaintiff and Antone Kangas, the prospective car purchaser, indicates that plaintiff was demonstrating the car to Kangas at the time of the accident.'' The record shows that plaintiff had no particular hours for work and was on duty at any time when he might wish to demonstrate a car; that Kangas was considering the purchase of a car prior to the date of the accident and did buy a Chevrolet car subsequent to the date of the accident.

Plaintiff testified as follows:

''*Q.* Why did Russell Petersen drive the car to Gaylord?

''*A.* Just because he is a good driver, and there is nothing to that, merely asking him to drive. In fact he was willing to drive. * * *

''*Q.* Was there any particular reason that you wanted him to drive?

''*A.* Well, I really wanted to talk to Kangas. That is what I wanted to do.

''*Q.* Why did you want to talk to Kangas?

''*A.* I had been trying to sell him an automobile. I was determined to sell him if I possibly could. * * *

''*Q.* Did you make any effort on that trip up to Gaylord to sell Mr. Kangas a car?

''*A.* I certainly did.

''*Q.* What did you do?

''*A.* I pointed out all the features it was possible to point out to him. In fact, we even played the radio going up.

''*Q.* Did Mr. Kangas indicate whether he would or would not purchase a Chevrolet?

''*A.* He talked very favorable. In fact he liked

the way it rode. He didn't ask to drive the car and I didn't ask him to.

Antone Kangas, a witness produced by plaintiff, testified as follows:

"*Q.*   What was said?

"*A.*   Well, first thing he—I was many times to Mr. Hanson's station looking for a car, and he was trying to make a deal that night. * * *

"*Q.*   Did you have any conversation with Mr. Atkinson on the way to Gaylord?

"*A.*   Yes.

"*Q.*   What were you talking about?

"*A.*   Well, I asked him how much he would promise to pay for my old car and how much the new one would cost. * * *

"*Q.*   Did you buy a car afterwards?

"*A.*   Yes.

"*Q.*   When did you buy a car?

"*A.*   It was I guess four or five weeks after that accident.

"*Q.*   What kind of a car did you buy?

"*A.*   Chevrolet sedan.

"*Q.*   Who did you buy it from?

"*A.*   Hanson's place."

In *Wilson* v. *McCabe & Dishaw*, 274 Mich. 74, we said:

"Nor do we weigh the evidence; if there is any evidence upon which the department could make a finding, it is our duty to affirm."

See, also, *Becker* v. *City of Detroit*, 267 Mich. 511.

In our opinion there is competent evidence to sustain the finding of the department * and the award is affirmed, with costs to plaintiff.

POTTER, NORTH, McALLISTER, and BUTZEL, JJ., concurred with SHARPE, J.

---

* See 2 Comp. Laws 1929, § 8451 (Stat. Ann. § 17.186).—REPORTER.

Bushnell, C. J. (*concurring*). Plaintiff testified in his own behalf and, if the department chose to believe him, there is competent testimony to support the award.

We are not triers of the facts and are precluded from weighing the testimony. The award is affirmed, with costs to appellee.

Chandler, J. (*dissenting*). This is an appeal in the nature of certiorari from an award of compensation to plaintiff by the department of labor and industry.

The accident occurred on March 10, 1938, plaintiff on that date being in the employ of defendant in Grayling, Michigan, as an automobile salesman. He regulated his own hours of employment and worked on a commission basis.

For some period of time, he had been attempting to sell an automobile to one Kangas, who had previously purchased a car in 1931. On March 9, 1938, Kangas, a carpenter, went to the salesroom to determine if his tool box could be fitted to the car he was inclined to purchase. About 9 or 9:30 p. m. of the same day, plaintiff and one Petersen, a mechanic employed in the garage, left the garage upon closing for the day and went to Lovely's restaurant where they remained until approximately 2 a. m. of the following day. During this entire period, according to the testimony adduced by plaintiff, he and his companion did nothing but drink coffee, although beer was sold in the restaurant. About 2 a. m., Kenneth Clise and Kangas, who had been in attendance at a fish fry where beer was served, entered the restaurant. The four visited for about an hour, when George Collins entered and requested assistance in starting his automobile. The entire party responded and, after having successfully attempted to start

Collins' car, stopped at the Plaza Grill where more coffee was consumed.

After spending a short time at the grill, they all entered the car used by plaintiff as a demonstrator and started for Gaylord, some 28 miles away, Petersen having been delegated to drive, with Kangas and Clise riding in the rear seat and plaintiff in the front seat with Petersen. It is the claim of plaintiff that the purpose of the expedition was to demonstrate the car to Kangas and discuss the prospective sale thereof with him. He testified that on the trip to Gaylord he pointed out the favorable features of the car to Kangas in an effort to complete the sale.

The party reached Gaylord about 8 o'clock a. m. on March 10, 1938, stopping in front of Murray's poolroom. Petersen entered the poolroom and Kangas and plaintiff visited Mary's place. They left Gaylord about 9:30 a. m. After traveling a short distance toward home, plaintiff went to sleep in the rear seat and remained asleep until the accident occurred.

According to the testimony offered by plaintiff, he had two bottles of beer during the entire evening, these having been consumed in Gaylord, and Petersen, the driver, had one bottle. However, Petersen later pleaded guilty to driving while under the influence of intoxicating liquors, although at the time of the hearing herein he claimed this was done because he believed he would thereby escape a charge of negligent homicide in the event plaintiff should die from the injuries received. He also signed a written statement regarding the circumstances surrounding the accident, wherein he said: "We had gone on a pleasure trip," and that before leaving Grayling all had drunk several bottles of beer. He further stated: "We were just driving the car around so we drove to Gaylord. There was no special reason why we

fellows got together," and that he heard no discussion between Kangas and plaintiff during the evening concerning purchase of the car.

The statement of Kangas related the visits of the party to several beer gardens in Grayling before leaving for Gaylord. He also said that he did not know how they happened to go to Gaylord.

Defendants claim that the accident did not arise out of and in the course of the employment of plaintiff. The department concluded that it did, holding that the report of compensable accident filed by defendants was prima facie evidence thereof, citing *Reck* v. *Whittlesberger,* 181 Mich. 463 (5 N. C. C. A. 917, Ann. Cas. 1916 C, 771); *Ginsberg* v. *Burroughs Adding Machine Co.,* 204 Mich. 130, and *McCartney* v. *Wood-Temple Co.,* 217 Mich. 505.

In the *Reck Case* we said:

"We think that such reports from the employer, where all sources of information are at his command when the reports are made, and he has had ample opportunity to satisfy himself of the facts, can properly be taken as an admission, and, at least, as *prima facie* evidence that such accident and injury occurred as reported."

In the *Ginsberg Case,* we commented on the holding in the *Reck Case* and *Fitzgerald* v. *Lozier Motor Co.,* 187 Mich. 660, stating,

"These two cases hold that where the employer or his authorized agent, whose duty it is to make report of accidents, who have the opportunity to investigate, makes a report as to the accident, such report is receivable as an admission, and as an admission may be sufficient to establish a *prima facie* case. It is unimportant how the employer procures his information. It may all be hearsay. It may come through several hands, from different sources; but when he or his authorized agent reports that

the accident happened in a certain way, the report stating that it happened in that way is an admission and receivable as such. These cases go no farther.''

The *McCartney Case* held that the information contained in the report filed by the employer was sufficient to support the finding of the department that the accident arose out of and in the course of the employment.

See, also, *Ayling* v. *City of Detroit,* 275 Mich. 338; *Kelly* v. *Ford Motor Co.,* 280 Mich. 378.

We conclude from an examination and review of our previous holdings that reports of accidents filed by an employer with the department, containing unqualified statements of 'fact, may be taken as *prima facie* evidence of such facts therein stated. This does not mean that the mere filing of a report is *prima facie* evidence of facts and conclusions necessary to support an award if the report contains no statement of fact bearing thereon.

In the instant case, excluding statements irrelevant to the issue, such as the age of the plaintiff, the report contains the following:

''25.   Place of accident in detail: Highway US-27 about one mile north of Frederic, Mich.

''26.   Describe clearly and definitely how accident occurred: Car sideswiped a truck.

''27.   Nature and extent of injury in detail: Broken right leg, broken left arm, cuts and bruises.''

There can be no argument with the conclusion that these statements, although *prima facie* evidence of the facts they relate, are not sufficient to support the finding that the accident arose out of and in the course of plaintiff's employment.

The award must be vacated unless the record contains other competent evidence to support the finding of the department on this issue.

From the statement of facts, it may be seen that the evidence conflicts as to whether plaintiff, on the evening in question, attempted to sell Kangas a car, either before or during the trip to Gaylord. We do not weigh the testimony and therefore accept the evidence adduced by plaintiff that he did.

However, from a review of the rest of the record, it is clearly apparent that the primary purpose of the expedition was a pleasure trip for the members of the party which consisted of riding around in plaintiff's demonstrator, listening to the radio, visiting various beer gardens and consuming quantities of alcoholic beverages, finally culminating in a ride to Gaylord. The efforts of plaintiff to sell Kangas a car were casual, incidental to the pleasure trip, and whatever attempt was made to sell the vehicle was obviously subordinate to the main objective of the evening. The trip would not have been made had not plaintiff and his companions determined upon this method of entertainment.

"We do not say that service to the employer must be the sole cause of the journey, but at least it must be a concurrent cause. To establish liability, the inference must be permissible that the trip would have been made though the private errand had been canceled. * * * The test in brief is this: If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own. * * * If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure of the private purpose, though the business errand was undone, the travel is then personal, and personal the risk." *Marks* v. *Gray*, 251 N. Y. 90 (167 N. E. 181).

See, also, annotation 78 A. L. R. 684.

We conclude that the foregoing test is applicable to the instant case. Upon application thereof, it is seen that the department was in error in holding that the accident arose out of and in the course of the employment.

The award should be vacated, with costs to defendants.

WIEST, J., concurred with CHANDLER, J.