### SOLOMON *v.* DETROIT UNITED RAILWAY.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—AWARD OF DEPARTMENT CONCLUSIVE IF SUPPORTED BY EVIDENCE.

   An award to an injured employee under the workmen's compensation act by the department of labor and industry is conclusive if the finding of the department is supported by any competent evidence.

2. SAME — FRAUD IN OBTAINING COMPENSATION UNDER FORMER ORDER—RESPONSIBILITY ON DEPARTMENT ON DISCOVERING FRAUD.

   The finding of the department that plaintiff is suffering from an injury received in defendant's employ, supported by evidence, is conclusive upon the Supreme Court, notwithstanding the fact that plaintiff practiced gross fraud in obtaining compensation from defendant on the ground of total disability previous to the order reviewed; the responsibility of seeing that such fraud, when detected, taints the subsequent claim of one guilty thereof resting squarely with the department.

On right and extent of review of findings of commission, see note in L. R. A. 1917D, 186.

Certiorari to Department of Labor and Industry. Submitted January 12, 1923. (Docket No. 94.) Decided March 23, 1923.

Joseph Solomon presented his claim for compensation against the Detroit United Railway for an accidental injury in defendant's employ. From an order awarding compensation, defendant brings certiorari. Affirmed.

*William G. Fitzpatrick (George M. O'Connor,* of counsel), for appellant.

WIEST, C. J. This is certiorari to the department of labor and industry and brings for review, within the limits of such writ, an award compensating plaintiff for an injury he claims to have received on June 5, 1915, while in the employ of defendant. The commission determined that plaintiff was suffering disability in the sacro-iliac region, resulting from the accident. Defendant claims that plaintiff is malingering and offered quite convincing evidence in support thereof. There is some evidence, however, supporting the finding of the commission, and our review of the facts ends when such is the case. We have held this so often as to render citation of authorities unnecessary. The record discloses a rank fraud practiced by plaintiff to obtain compensation from defendant on the ground of total disability previous to the order in question, and while he was in fact working elsewhere and earning at least $6 a day.

On June 5, 1915, plaintiff claims he wrenched his body in steadying a ladder. He was then earning $13 a week in the employ of defendant. In February, 1916, he returned to his work for defendant and on April 11th, that year, was paid $227.50, compensation for lost time, and he continued to so work until

October, 1918, a period of 2 years and 8 months, when he was discharged. He thereupon demanded that he be given compensation again, but an examination by a physician determined he was able to perform ordinary work, and he returned to work for defendant, remaining, however, but a short time. On April 14, 1919, he went to work for the Ford Motor Company as a common laborer and worked there until November, 1920, earning $6 a day. It appears that each person employed by the Ford Motor Company is required to pass a physical examination and plaintiff was examined on April 12, 1919, by the Ford Motor Company's physician. The physician testified:

"The examination consisted first in a statement from him as to his physical condition, an examination of the eyes, urine analysis, height and weight was taken, and his clothing was removed and he was examined from head to foot."

The report made by the physician at that time shows:

"That his physical condition and general appearance was good and that he was fit to do moderate work."

From April 14, 1919, to November 22, 1920, he was paid $2,669.25 by the Ford Motor Company.

April 16, 1920, plaintiff made affidavit that he had not worked for any other concern since the date of his injury, except the Detroit United Railway, and that since leaving defendant's employ he had not been to work at all. This affidavit was absolutely untrue. Relying upon such affidavit defendant again entered into agreement to pay plaintiff $6.50 a week during total disability. This agreement was approved by the commission. Thereafter defendant learned of plaintiff's employment by the Ford Motor Company and in May, 1921, filed a petition with the commission to be relieved from the payment of any further compensa-

tion.    Plaintiff made application to the commission to be awarded a lump sum.    The commission, in July, 1921, denied plaintiff's application for a lump sum and granted defendant's application that the case be closed but without prejudice to the right of plaintiff to have the case reopened if he should in the future become disabled on account of the accident.    November 3, 1921, plaintiff again petitioned the commission to reopen the case on the ground that he had done no work since leaving the Ford Motor Company and was suffering such disability as to incapacitate him from any work whatsoever.    The commission reopened the case and awarded plaintiff compensation at the rate of $6.50 per week, after August 9, 1921, but provided that the sum of $480.75, theretofore paid plaintiff by defendant as compensation during the time he was working and earning as great or greater wages than he was earning when injured, should be deducted from the first payments to fall due.

Defendant contends that:

"Liability under the workmen's compensation act resting solely upon contract (*Wood* v. *Vroman*, 215 Mich. 463), and it being obtained by a fraudulent act, there was not a good consideration for the promise as was said in *Comstock* v. *Draper*, 1 Mich. 481 (53 Am. Dec. 78)."

It is true that the workmen's compensation act rests upon contract, but it is the contract of employment between employer and employee where the employer has elected to come under the act.    It has no application to an agreement for compensation after an accident, and if it had, it would not help defendant for plaintiff seeks nothing under such agreement.

Plaintiff falsified when he made the affidavit mentioned and he again falsified when he represented in his petition to the commission on February 18, 1920, that he had done no work since October, 1918, and had been dependent upon the charity of his friends.

Just how far such perfidy can be perpetrated to mulct an employer and even attempted upon the commission and still preserve to plaintiff tender consideration under the workmen's compensation law was one of the questions before the commission. Unhappily, we are helpless, under the finding of the commission that plaintiff is suffering disability from the injury he received in June, 1915, to review the question. We do not hear this kind of a case *de novo*. Plaintiff has stamped himself as a person wholly unworthy of belief, and his crooked methods lend great support to the claim of defendant that he is malingering. Under the order of the commission he is only required to give defendant credit for the money he received on the strength of his false affidavit. The compensation law, enacted for the protection of workmen, was employed by plaintiff to work out his wicked scheme to extort money from defendant by false affidavit in April, 1920. The law, as it now stands, seems to contain no provision we can apply against one practicing such a fraud as here disclosed. The responsibility of seeing that such a fraud, when detected, ought to taint the subsequent claim of one guilty thereof rests squarely with the commission.

We are compelled, by the finding of the commission, and the law as it now stands, to affirm the award, with costs to plaintiff.

FELLOWS, McDONALD, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.