RYDER *v.* JOHNSON.

1. WORKMEN'S COMPENSATION—DEPARTMENT'S FINDING CONCLUSIVE IF SUPPORTED BY EVIDENCE—INFERENCES.

The Supreme Court must adopt findings of fact of the department of labor and industry as conclusive, unless there is no competent evidence to sustain such findings; but the court may determine whether there is any competent evidence to support such findings or whether inferences drawn are properly deducible from the testimony (2 Comp. Laws 1929, § 8451, as amended by Act No. 245, Pub. Acts 1943).

2. SAME—LOSS OF FOOT—CONTROL OF COMBINE—HARVESTING GRAIN.

In plaintiff's proceeding to recover compensation for loss of foot while operating his own combine in cutting and threshing defendant's 16-acres of wheat, where it is shown that defendant specified the cutting should be done when the wheat was ripe in such a way as to save all the straw possible, that defendant would furnish the bags, took complete charge of the wheat and straw, and told plaintiff he was carrying insurance and then made a report to his insurer, and it appears plaintiff would stop any time defendant told him to do so, department was justified in finding that the relationship between the parties was that of employer and employee, since the mere right to control the combine machine did not establish that plaintiff controlled the entire operation of harvesting the grain (2 Comp. Laws 1929, §§ 8426, 8451, as amended by Act No. 245, Pub. Acts 1943).

Appeal from Department of Labor and Industry. Submitted January 15, 1946. (Docket No. 36, Calendar No. 43,236.) Decided March 4, 1946.

Almon F. Ryder presented his claim for compensation against Ole Johnson, employer, and State Accident Fund, insurer, for injuries sustained while in

his employ.   Award to plaintiff.   Defendants appeal.
Affirmed.

*Walsh, Walsh, O'Sullivan & Schlee,* for plaintiff.

*Harry F. Briggs (Henry A. Compeau,* of counsel),
for defendant.

CARR, J.   This is an appeal from an order of the
department of labor and industry awarding compen-
sation to plaintiff for the loss of a foot.*   The acci-
dent in which the injury was sustained occurred on
defendant Johnson's farm, July 31, 1944.   Prior
thereto and in the fall of 1943, plaintiff, who was en-
gaged in farming operations with his son, purchased
a combine.   In order to obtain the necessary priority
for such purchase he agreed with the agricultural
adjustment association that he would use the ma-
chine, if his own work permitted, to assist neighbor-
ing farmers.   Approximately a week before the
accident occurred defendant Johnson communicated
with plaintiff and the parties entered into an ar-
rangement whereby plaintiff was to cut and thresh,
with the combine, 16 acres of wheat on defendant
Johnson's farm.   On July 28, 1944, plaintiff and his
son went to the Johnson farm in the afternoon and
started the work.   Because the grain was tough,
however, the operation was discontinued until the
following day.   Due to a rainstorm then occurring
the cutting was postponed until the afternoon of
July 31st, when it was resumed.   The accident was
brought about by plaintiff getting his foot in the
cylinder of the combine, sustaining an injury that
necessitated amputation.

It appears from the record that defendant was
subject to the provisions of the workmen's compen-

---

* See 2 Comp. Laws 1929, § 8426, as amended by Act No. 245, Pub.
Acts 1943 (Comp. Laws Supp. 1945, § 8426, Stat. Ann. 1945 Cum.
Supp. §17,160).—REPORTER.

sation act (Act No. 10, Pub. Acts 1912 [1st Ex. Sess.], as amended [2 Comp. Laws 1929, § 8407 *et seq.* (Stat. Ann. § 17.141 *et seq.*)]). , Plaintiff filed his petition for compensation, hearing was had thereon before a deputy of the department, who awarded compensation, and an appeal was then taken to the compensation commission,* by which the order of the deputy was affirmed.

On the hearing before the deputy commissioner plaintiff and his son were the only witnesses examined. It is the claim of defendant that there was no conflict in the testimony and that the only permissible conclusion to be drawn therefrom is that plaintiff was an independent contractor. It is insisted that the finding of the department of labor and industry that the relation of employer and employee existed between plaintiff and defendant Johnson, at the time of the accident, is not supported by the record. On behalf of plaintiff it is contended that the finding was correct and fully supported by the evidence, properly construed.

In *Bjorkstrand* v. *Klagstad,* 262 Mich. 186, it was said:

"In accordance with 2 Comp. Laws 1929, § 8451,† we must adopt the findings of fact of the department of labor and industry as conclusive, unless there is no competent evidence to sustain such findings. *Meyers* v. *Railroad Co.,* 199 Mich. 134; *Luyk* v. *Hertel,* 242 Mich. 445; *Solomon* v. *Railway,* 221 Mich. 599. We may, however, determine whether there is any competent evidence to support such findings, or

* See 2 Comp. Laws 1929, §§ 8310, 8312, as amended by Act No. 241, Pub. Acts 1943 (Comp. Laws Supp. 1945, §§ 8310, 8312, Stat. Ann. 1945 Cum. Supp. §§ 17.1, 17.3), as to powers and duties of the compensation commission of the department of labor and industry.—Reporter.

† Since the cited case was decided this section was amended by Act No. 245, Pub. Acts 1943 (Comp. Laws Supp. 1945, § 8451, Stat. Ann. 1945 Cum. Supp. § 17.186).—Reporter.

whether the inferences drawn are properly deducible from the testimony. *Ginsberg* v. *Burroughs Adding Machine Co.*, 204 Mich. 130; *Kirkley* v. *General Baking Co.*, 217 Mich. 307.''

The question for determination is whether the evidence, as it appears in the record, may reasonably be construed to support the inferences drawn therefrom by the department. *Glenn* v. *McDonald Dairy Co.*, 270 Mich. 346; *Salmi* v. *New Era Life Assn.*, 276 Mich. 457. The following excerpts from the testimony of plaintiff indicate the nature of the arrangement into which the parties entered:

"*Q.* What conversation did you have that day?

"*A.* Well, he took us out and showed us the field and the furrows and one thing and another. * * *

"*Q.* Did you discuss the cutting of that wheat that day?

"*A.* Yes, he said he wanted it cut so as to save his straw, he wanted to bale his straw.

"*Q.* Did Mr. Johnson tell you that he wanted that wheat cut, Mr. Ryder?

"*A.* Well, he didn't say right off; just when it was fit. He left that up to us to decide when it was fit to cut. * * *

"*Q.* Mr. Ryder, was there anything said about how payment for this work was to be made, how much he would pay you?

"*A.* No, there was nothing mentioned that day. * * *

"*Q.* You mentioned before something about Mr. Johnson telling you about the straw. Did he tell you how he wanted that wheat cut?

"*A.* Yes, he wanted it cut so he could bale the straw, cut it as low as we could to get the straw.

"*Q.* The lower the combine is set the more straw you will get?

"*A.* The lower the combine is set the more straw you get.

"*Q.* Were you to do anything with the straw?

"*A.* No. * * *

"*Q.* Was Mr. Johnson there?

"*A.* Yes, he was.

"*Q.* Did he view the operation?

"*A.* Yes.

"*Q.* Was he there at the time?

"*A.* Yes. * * *

"*Q.* Who supplied those bags?

"*A.* Mr. Johnson.

"*Q.* Did he give them to you that day?

"*A.* Yes. * * *

"*Q.* Mr. Ryder, I will ask you on this work you were doing for Mr. Johnson, Mr. Johnson had told you to come up—if he came out and told you to stop at any time on that job, would you have stopped the work?

"*A.* Yes, we would.

"*Q.* Did Mr. Johnson tell you or give you any specific directions with reference to taking in the wheat or letting it lay in the field as it was bagged?

"*A.* He said that he would take care of the wheat.

"*Q.* He told you to let it lay?

"*A.* Yes. * * *

"*Q.* Mr. Ryder, did you discuss this accident with Mr. Johnson after it occurred?

"*A.* Yes.

"*Q.* Did Mr. Johnson tell you he had made a report to the insurance company?

"*A.* Yes.

"*Q.* Did he tell you he was covered by insurance?

"*A.* Yes. * * *

"*Q.* He had no set time for you to go to work, did he, he didn't tell you to come in at 7 o'clock or 8 o'clock or 9 o'clock or 10 o'clock?

"*A.* He said we knowed more about combining than he did.

"*Q.* You knew more about it than he did?

"*A.* When the grain is fit, you see.

"*Q.* Yes. You knew more about that than he did?

"*A.* Yes.

"*Q.* So all he held you for was the result of the job, for the combining of the 16 acres, and as for the rest, that was up to you when it should be cut?

"*A.* Well, that is what he said.

"*Q.* And all he did was furnish bags for the grain?

"*A.* Furnished bags for the grain and took care of them. * * *

"*Q.* Mr. Ryder, you would use your own judgment when the wheat was to be cut, is that right?

"*A.* Yes.

"*Q.* You had no set time to go to work or quit, that was up to you?

"*A.* He said when the wheat was ready, I know more about it. * * *

"*Q.* On this particular job, having reference to this Johnson work you were doing here, the time you would start and when you would finish wasn't a matter of your judgment entirely, was it, that is, when you wanted to do it?

"*A.* No. * * *

"*Q.* Mr. Johnson said he wanted it cut when it was ripe to cut?

"*A.* When it was ripe, yes."

Plaintiff's son, Harland Ryder, was called for cross-examination by defendants and gave testimony in accord with that of his father. We quote:

"*Q.* He didn't tell you when to start work or when to quit work?

"*A.* No, he told us that—

"*Q.* He would leave that up to you?

"*A.* He said that would be up to us. He said he never saw any of it combined, and he said that whenever the weather is right to come over and cut it.

"*Q.* So that all he held you responsible for was the result of the job?

"*A.* He said he wanted it done as soon as possible."

It appears from the testimony quoted that, in bargaining with plaintiff for the cutting and threshing of the grain, defendant Johnson specified that the cutting should be done when the wheat was ripe and in such manner as to save all the straw possible. In other words, he gave directions at the outset with reference to the doing of the work. It is significant, also, that the entire operation of harvesting the grain and securing the straw was not, under the arrangement actually made and carried out, turned over to plaintiff. The latter was operating the combine and defendant Johnson furnished the bags and took complete charge of the grain and also the straw. It is true that, so far as the mechanical operation of the combine is concerned, plaintiff was in complete charge; but the mere right to control the machine is not sufficient to establish that plaintiff controlled the entire operation of harvesting the grain. Defendant was present and doing his part of the work in accordance with the arrangement. Plaintiff's testimony, above quoted, indicating that he did not consider the doing of the work rested entirely with him and that he would have stopped at any time defendant Johnson had told him to do so, is significant as indicating the understanding of plaintiff as to what the arrangement actually was and as to the rights of each of the parties thereunder. Such understanding is not at variance with the testimony as to what the parties said and did.

It should be noted, also, that plaintiff's testimony to the effect that defendant Johnson admitted that he (Johnson) was carrying insurance and that he had made a report to the insurance company is not contradicted. The fact that such report was made by defendant tends to indicate that he considered

that the relation between himself and plaintiff was that of employer and employee, or at least that there was some question in his mind with reference to the matter. *Bradley* v. *Republic Creosoting Co.*, 281 Mich. 177.

On the record it cannot be said that the findings of the department, and the conclusions and inferences drawn leading to such findings, are not based on the proofs. The evidence supports the determination that defendant Johnson, under the arrangement between himself and plaintiff, retained such right of control and direction as to establish the relationship between the parties as that of employer and employee.

The order of the department awarding compensation is affirmed, with costs to plaintiff.

BUTZEL, C. J., and BUSHNELL, SHARPE, BOYLES, REID, NORTH, and STARR, JJ., concurred.