FORNER *v.* AMERICAN BOX BOARD COMPANY.

1. WORKMEN'S COMPENSATION—ACCEPTANCE OF OTHER WORK BY SKILLED WORKMAN.

In proceeding to recover workmen's compensation, brought some five months after receiving injury to left hand by a skilled employee who continued to work nearly six weeks after proceeding was commenced, defendants' claim that plaintiff refused work that should have been accepted by him *held*, not supported by record, where it appears that although plaintiff made a prolonged effort to continue in the work at which he was engaged when injured, the injury rendered him physically unfit to do it and no specific employment at designated wages was offered to plaintiff in lieu of the work he had been doing.

2. SAME—QUITTING EMPLOYMENT—JUSTIFICATION.

Employee who continued in work at which he was engaged when injured for upwards of six months thereafter but who then quit because the injury which resulted in 50 per cent. impairment of functioning of injured hand and pain while performing such work *held*, justified in quitting his employment.

3. SAME—HAND INJURY.

Left-handed skilled employee whose left hand was so severely injured by machine used in the manufacture of cardboard boxes as to result in a 50 per cent. impairment in the functioning of the hand and which caused pain when he undertook to use the hand in manner required to operate such machine, sustained an injury entitling him to workmen's compensation.

4. SAME—FINDING BY DEPARTMENT—EVIDENCE—SUPREME COURT.

Under the workmen's compensation act it is the duty of the department of labor and industry to consider the testimony before it, to determine the facts and draw legitimate inferences therefrom and its findings of fact, if supported by competent proof, must be accepted by the Supreme Court as it does not weigh the evidence (2 Comp. Laws 1929, § 8451, as amended by Act No. 245, Pub. Acts 1943).

Appeal from Department of Labor and Industry. Submitted June 10, 1947. (Docket No. 52, Calendar No. 43,638.) Decided October 13, 1947.

Norman George Forner presented his claim for compensation against American Box Board Company, employer, and Employers Casualty Underwriters, insurer, for injuries sustained while in its employ. Award to plaintiff. Defendants appeal. Affirmed.

*Linsey, Shivel, Phelps & Vander Wal*, for plaintiff.

*Lacey, Scroggie, Lacey & Buchanan*, for defendants.

CARR, C. J. Plaintiff in this case was injured on January 12, 1946, while in the employ of the defendant American Box Board Company. He was at the time engaged in operating a machine used in the manufacture of cardboard cartons or boxes. Said machine, known as a Swift Blanker, was equipped with printing mechanism. Plaintiff's left hand was caught in the rolls of this mechanism, and was drawn into the machine. As a result, the index finger was badly lacerated, the third finger was broken, and the hand and wrist also sustained injury.

Following the occurrence, plaintiff was treated by the company doctor for approximately four months. He lost no time as a result of the injury, the hand being bandaged by the doctor, and plaintiff returning to work on the next regular work day. For a period of three or four weeks he merely supervised the operation of the machine on which he had been injured. During his prior employment, he had acted as operating supervisor and had also

alternated with three other employees in bringing stock to the machine, feeding it, and removing the completed cartons.

At the suggestion of the doctor who was treating him, plaintiff, following the removal of the bandage from his hand, undertook to carry on his work in like manner as before the injury. On June 14th, following, he filed his application for compensation under the workmen's compensation act of this State (Act No. 10, Pub. Acts 1912 [1st Ex. Sess.], as amended [2 Comp. Laws 1929, § 8407 *et seq.* (Stat. Ann. § 17.141 *et seq.*)]), with the department of labor and industry. To such application defendant filed an answer denying plaintiff's right to benefits under the act. The matter was brought on for hearing before a deputy of the department, who determined, on the basis of the proofs taken, that plaintiff was entitled to compensation at the rate of $21 per week until further order. From this award an appeal was taken by the defendant employer to the compensation commission of the department of labor and industry.* The commission found that plaintiff was entitled to compensation, and affirmed the award. On leave granted, defendants have appealed.

It is unquestioned that plaintiff's injury arose out of, and was suffered in the course of, his employment. It is also undisputed that he was a skilled employee in the particular kind of work in which he was engaged. It appears from the record that following the occurrence in which plaintiff was injured he continued to be employed by defendant American Box Board Company until July 27, 1946, four days prior to the hearing before the deputy

---

* See 2 Comp. Laws 1929, § 8310 *et seq.*, as amended by Act No. 241, Pub. Acts 1943 (Comp. Laws Supp. 1945, § 8310 *et seq.* [Stat. Ann. 1946 Cum. Supp. § 17.1 *et seq.*]).

commissioner. During such period he continued to supervise the operation of the Swift Blanker machine, and after the first three or four weeks undertook to do his share of the physical labor involved. He testified on the hearing that he could not perform his duties efficiently, that he was unable to close his left hand, that his grasp of the loads that he was required to handle was weak, that in feeding the machine he sometimes dropped material, and that doing the work resulted in pain in his hand and wrist. In substance, plaintiff contended that because of the condition resulting from the injury, he found it impossible to continue in the employment in which he was engaged on January 12, 1946. The following testimony given by plaintiff before the deputy will serve to indicate his claims in this respect:

"*Q.* (By Mr. Linsey): How much did you operate the machine as compared with your former work?

"*Mr. Lacey:* I object to that as not relevant.

"*The Witness:* I lost out about 40 to 50 per cent.

"*Q.* (By Mr. Linsey): And why were you down there doing that?

"*A.* Because they wanted me to stay and the doctor wanted me to work and so I stayed until I figured that there wasn't any hopes of it and it was too hard and I couldn't keep up with the rest of the gang and so I got out.

"*Q.* Does it hurt you in any way when you are working that machine?

"*A.* Yes, it hurts my wrist and it hurts if I lift hard with it, and of course, a broken finger will hurt, and my wrist won't stand up to that.

"*Q.* What grip do you have in that left hand?

"*A.* I haven't got much of a grip in the hand. I can't hang onto a bunch of boards. They slip away from me when I go to raise them and shove

them into the feeder.  When I try to do that, they get away from me.  I haven't got enough strength in my hand to handle it.

"Q.  You haven't got enough strength in which hand?

"A.  Well, you have to use both hands.  You have to have two good hands."

The claims of the plaintiff as to the difficulties under which he worked were supported by the testimony of a fellow employee, a witness in his behalf. Defendant's witness, John Winter, who was superintendent of the department in which plaintiff worked, also testified as follows:

"Q.  And there is no doubt about the fact that a man ought to have two good hands to do that work?

"A.  I would think so, sir.

"Q.  And there is no doubt about the fact that his left hand isn't as good as it was before the injury?

"A.  That is right.

"Q.  It is impaired, isn't it?

"A.  I would think so.

"Q.  And it appears to be more or less a permanent situation, doesn't it?

"A.  That I can not answer, sir.

"Q.  A man ought to be able to grip, to have a grip in his hands to handle that heavy paper at times?

"A.  It is necessary.

"Q.  You say it is necessary?

"A.  Yes."

In June, 1946, plaintiff was examined by a physician, who testified as to the condition of the fingers, hand and wrist at the time of the examination, substantiating the claims of the plaintiff with reference thereto.  We quote the following from the testimony of the physician:

"*Q.* All of this condition is due to the fingers of the hand?

"*A.* I wouldn't say so necessarily. He has had some crushing injury probably, to the intrinsic muscles of his hand as well as to the fingers.

"*Q.* He spoke of getting his hand—when he was injured—of having his arm in the machine up to his elbow?

"*A.* Yes.

"*Q.* There is nothing beyond the wrist there, is there? He has full motion of his wrist, has he?

"*A.* He has some limitation of extension of his wrist and it is painful.

"*Q.* He can pronate and supinate that wrist, can he?

"*A.* Yes, sir.

"*Q.* He can do that?

"*A.* That is right.

"*Mr. Linsey:* Did you say there was some limitation in the wrist?

"*The Witness:* He has a painful extension of the wrist and some limitation of extension at the wrist.

"*Q.* (By the Commissioner): Did you test his grip, Doctor?

"*A.* Yes.

"*Q.* With what result?

"*A.* He has a very weak grip for anything smaller than a whole hand. In other words, in testing the grip grossly by one finger, two fingers, three fingers and so forth, he can't grip anything until you have four fingers in his hand.

"*Q.* Could this man do work that would require him to use both hands in lifting these large objects that he has told us about? You heard him testify here today, did you?

"*A.* Yes.

"*Q.* Could he do that type of work today?

"*Mr. Lacey:* The same objection.

"*The Witness:* I don't believe that he would do it efficiently.

"*Q.* (By the Commissioner): He would have to have favored work, would he, Doctor?

"*A.* Yes, sir.

"*Q.* If you were examining this man for employment for such a job, would you pass him for another employer as physically fit to do that class of work?

"*A.* No, sir."

No claim is made by defendants that the award is excessive in amount, if plaintiff is entitled to any compensation. It is insisted, however, that his physical condition did not prevent his continuing in the work at which he was employed at the time of the injury; that he might have continued if he had been willing to do so; and that the facts disclosed by the proofs taken on the hearing did not justify him in quitting the employ of the defendant American Box Board Company. The claim is also made that if the work in which plaintiff was engaged was too difficult for him to handle efficiently, he might, had he so desired, have been assigned to other duties requiring less physical effort. It appears from the testimony of Mr. Winter, defendant employer's superintendent, that there was some conversation between himself and plaintiff with reference to the latter discontinuing work for the American Box Board Company. In answer to questions of counsel, Mr. Winter stated that he had discussed "in generalities" the matter of other possible employment with plaintiff. Examined by the deputy commissioner, he testified further on the subject as follows:

"*Q.* He has told us that he had some discussion with you, Mr. Winter, about another job and he said that he was having trouble doing this work. Is that true?

"*A.* We talked in generalities about another job, Mr. Commissioner.

"*Q.* What was this other job that you had to offer to him at that time?

"*A.* We didn't have any specific one in mind. We talked about a paster job or a mechanics job. I was more or less concerned in trying to find out what Mr. Forner would like to do.

"*Q.* Is he a good all-around man and could he work at any of those other jobs?

"*A.* I believe he could, sir.

"*Q.* But this job that he was on was skilled work?

"*A.* I would say that it was a skilled job, yes.

"*Q.* And he filled it apparently to your satisfaction and you were satisfied with his services while he was there and up to the time that he left?

"*A.* Yes.

"*Q.* How much do you think you could pay him on these other jobs?

"*A.* In our plant we have a job-rate system. Whichever job he fills, we have a job rate for that. We have no man-rate in the plant. The hiring rate is 75¢ an hour and the ratings go on up from there.

"*Q.* He wouldn't go back to the 75¢ minimum rate, would he?

"*A.* It would be dependent on which job he could fill."

Plaintiff's testimony was not materially at variance with that given by Mr. Winter. In answer to the specific question as to whether he had been offered other work by his employer that would pay as much as he was earning at the time of his injury, he replied, "Not that I could do, no." It thus appears from the testimony of both the plaintiff and defendants' witness that no specific employment at designated wages was offered to plaintiff in lieu of his employment on the Swift Blanker machine. In consequence, defendants' contention that plaintiff refused work that should have been accepted by him is not supported by the record.

Defendants' denial that plaintiff is entitled to any compensation rests principally on the contention, above noted, that his condition as disclosed by the proofs was not such as to justify him in quitting his employment. The compensation commission rejected this contention, saying in part:

"Plaintiff is a left-handed man; the injury was to his left hand. We find he was a skilled worker, and that the accidental personal injury arose out of and during the course of his employment. A review of the record discloses, that he has lost no wages until July 27, 1946, when he quit the work. His average, weekly wage was $70.50 including the bonus which averaged from $5 to $20 depending how fast a man could work. The plaintiff was cooperative with Dr. Denham, the company physician, when he returned to work with his hand in a bandage. We think the compensation act does not contemplate penalizing a man who has been crippled, as in this instance, by industrial injury, when he tries to cooperate by returning to work. On the other hand, the law does not provide a pension and the injured should make every effort toward rehabilitation. In this instance the company has offered the plaintiff continuing work on the same job. Plaintiff insists the work is too hard for him, and he can not continue it because of the injured hand.

"Upon review we believe the deputy commissioner arrived at the right conclusion. The plaintiff has given the work an honest and fair trial. We think and find he is entitled to the compensation awarded by the deputy commissioner. The award is affirmed."

The finding that plaintiff was a skilled worker is clearly supported by the proofs, including the testimony, above quoted, of defendants' witness, Mr. Winter. There is no dispute as to the average weekly wage that plaintiff was receiving immedi-

ately prior to the injury. The question at issue is whether plaintiff sustained an injury of such character as to entitle him to compensation under the statute. Defendants' claim in substance is that the record contains no evidence to support the finding of the compensation commission in this regard. With this contention we are unable to agree. As indicated by the excerpts above set forth from the testimony, plaintiff sustained a severe injury to his hand, resulting in inability on his part to do his work efficiently, and causing pain when he undertook to use his hand in the manner required by the operation of the machine at which he was employed. The medical witness, before referred to, stated in substance that there was a 50 per cent. impairment in the functioning of the hand.

Among other cases cited, counsel for defendants rely on *Pigue* v. *General Motors Corp.*, 317 Mich. 311. The plaintiff in that case sustained an injury arising out of and in the course of his employment. Being unable to perform the work in which he was engaged at the time, he was given another position, involving clerical duties, without loss of wages. While thus employed a strike was called by the union of which plaintiff was a member, whereupon plaintiff discontinued his employment. He later returned to work. Thereafter he filed a claim for compensation and was granted an award by the department of labor and industry covering the period during which he was unemployed. On appeal this Court vacated the award, it appearing from the proofs that plaintiff quit his position, not because of the injury he had received, but because of the strike. He was able to perform the clerical work assigned to him, and had he continued to do so he would not have sustained any loss of wages. In the case at bar, however, it is the claim of the plaintiff

that he was physically unable, because of his injury, to continue in the work he was doing. As above pointed out, he offered proof to substantiate such claim on the hearing before the deputy commissioner. The facts before us on this record are materially different than those involved in the *Pigue Case.*

2 Comp. Laws 1929, § 8451, as amended by Act No. 245, Pub. Acts 1943 (Comp. Laws Supp. 1945, § 8451 [Stat. Ann. 1946 Cum. Supp. § 17.186]), provides in part as follows:

"The findings of fact made by the compensation commission acting within its powers, shall, in the absence of fraud, be conclusive, but the Supreme Court shall have power to review questions of law involved in any final decision or determination of said compensation commission."

Under the statute it is the duty of the department of labor and industry to consider the testimony before it, to determine the facts, and to draw legitimate inferences from such facts. On appeal this Court does not weigh the evidence. The findings of fact of the department, if supported by competent proof, must be accepted. *Graham* v. *City of Lansing,* 303 Mich. 98; *Wolanin* v. *Chrysler Corp.,* 304 Mich. 164; *Holloway* v. *Ideal Seating Co.,* 313 Mich. 267; *Ryder* v. *Johnson,* 313 Mich. 702.

In the case at bar we determine there is competent evidence to support the findings of the department of labor and industry. The award is therefore affirmed, with costs to plaintiff.

BUTZEL, BUSHNELL, SHARPE, BOYLES, REID, NORTH, and DETHMERS, JJ., concurred.