WEST v. NORTHERN TREE COMPANY.

1. WORKMEN'S COMPENSATION—NOTICE OF INJURY.

The statutory requirement that an injured employee give notice of the injury to the employer within 3 months after the happening thereof serves to protect employers from stale claims and to facilitate their prompt investigation of the facts with the view toward providing necessary medical attention and minimizing the effect of any injuries (CLS 1956, § 412.15).

REFERENCES FOR POINTS IN HEADNOTES

[1, 3]  58 Am Jur, Workmen's Compensation § 375.
Requirement of workmen's compensation act as to notice of accident or injury.    78 ALR 1232, 92 ALR 505, 107 ALR 815, 145 ALR 1263.
[2]  58 Am Jur, Workmen's Compensation § 378.
[4]  58 Am Jur, Workmen's Compensation § 377.

2.. SAME—NOTICE OF INJURY.
   The notice of an injury that is required to be given to the employer by the workmen's compensation act may be written or oral and is not required to have nicety of expression so long as it is of a nature to reasonably inform the employer that a compensable injury was sustained (CLS 1956, § 412.15).

3. SAME—NOTICE OF INJURY—QUESTION FOR TRIER OF FACTS.
   Generally the question of the giving of timely and sufficient notice of an injury under the workmen's compensation act is one of fact (CLS 1956, § 412.15).

4. SAME—BRUSH CUTTER—FROZEN HANDS—NOTICE OF INJURY.
   Brush cutter who exhibited hands to foreman in mid-February and complained they were freezing *held*, to have given sufficient notice of time, place, and cause of injury, which ultimately caused loss of 1 finger through amputation, there being no evidence of intent to mislead the employer, and evidence was sufficient to support workmen's compensation appeal board's finding of fact that ample notice of plaintiff's injury had been given employer (CL 1948, §§ 412.16, 412.18, 413.12).

   DETHMERS, C. J., and CARR, J., dissenting.

Appeal from Workmen's Compensation Appeal Board. Submitted October 4, 1961. (Docket No. 20, Calendar No. 49,294.) Decided December 28, 1961.

Henry E. West presented his claim against Northern Tree Company, employer, and State Accident Fund, insurer, for compensation because of frozen hands. Award to plaintiff. Defendants appeal. Affirmed.

*Doyle, James & Dark* (*Richard M. James*, of counsel), for plaintiff.

*Harry F. Briggs* (*Richard J. Anderson*, of counsel), for defendants.

EDWARDS, J. This is a workmen's compensation case in which compensation was ordered by a referee and the appeal board of the workmen's compensation

commission due to injuries sustained from freezing of plaintiff's hands while he was employed cutting brush for the Northern Tree Company on or about February 16, 1957.

The single question raised by defendant-appellants on appeal is—did the plaintiff give prompt notice of his injury to the employer as required by section 15, part 2 (CLS 1956, § 412.15 [Stat Ann 1960 Rev § 17.165]), of the workmen's compensation act?

The section relied on follows:

"No proceedings for compensation for an injury under this act shall be maintained, unless a notice of the injury shall have been given to the employer within 3 months after the happening thereof."

The facts in this matter are cited thus in the opinion on review of the workmen's compensation appeal board:

"Plaintiff worked for the defendant as a brush cutter. He commenced work on February 2, 1957, and worked through February 16, 1957. His foreman would allow a brush fire so that employees could warm their hands. On February 16th plaintiff's work crew was moved to another location with another foreman. This foreman would not permit a brush fire and the plaintiff froze his right hand.

"The record indicates that the plaintiff started to build a fire and that the new foreman kicked the brush away and said, 'in this crew we don't have a fire, either work or go home.' At that time the plaintiff said to the foreman, 'My hands is cold, my hands is freezing.' He also showed his hands to the foreman and said, 'How could a man work with hands cold like that?' In our opinion the defendant, through its foreman, had ample notice of the plaintiff's injury. The award of Referee Lewis is affirmed with the modification that past due payments draw interest at the rate of 5% per annum."

Subsequent to the date referred to above, claimant testified that he had considerable pain with his hands

on the evening of the day in question and that his hands continued to give him trouble for a period of over a year during which he first had the nail of the right index finger removed and subsequently had the right index finger amputated down to the knuckle. This operation occurred on April 4, 1958.

This record provides no dispute and appellants bring us no question as to causal relationship between the episode of February 16, 1957, and the loss of the finger and the periods of disability when claimant was hospitalized.

February 16, 1957, however, was the last day that claimant worked for defendant company and, of course, the significance of the nature of the report is greater in that the employer had no contact with claimant's condition thereafter until after the date of the amputation. Defendants presented no testimony at all at the time of the hearing and the record consists entirely of the testimony of claimant, his wife, and the operating surgeon.

Relying entirely on claimant's own testimony, defendants claim that no notice as required by statute was given to the employer because claimant testified that after leaving work on February 16, 1957, he did not again call the condition of his hands to the attention of the employer until the filing of the application.

The notice provision, of course, serves to protect employers from stale claims and to facilitate their prompt investigation of the facts with the view toward providing necessary medical attention and minimizing the effect of any injuries. This Court has held in *Banks* v. *Packard Motor Car Company,* 328 Mich 513, 517:

"The notice, which may be written or oral, requires no niceties of expression so long as it is of a nature to reasonably inform the employer that a compensable injury was sustained."

On this appeal we are confronted with a finding of fact on the part of the workmen's compensation appeal board:

"The defendant, through its foreman, had ample notice of the plaintiff's injury."

Generally the question of the giving of timely and sufficient notice is one of fact. *LaPorte* v. *Kalamazoo Stove & Furnace Co.,* 308 Mich 687; *Mauch* v. *Bennett & Brown Lumber Co.,* 235 Mich 496.

The record here indicates that claimant gave notice of "the time, place and cause of the injury." CL 1948, § 412.16 (Stat Ann 1960 Rev § 17.166). He related the cause of injury and showed the resulting condition as it was known to him at the time. He did not know that it would lead to amputation and disability until long after the statutory limit had run. The law should not be read to require the impossible. And in this statute we have an express command not to do so:

"A notice given under the provisions of this act shall not be held invalid or insufficient by reason of any inaccuracy in stating the time, place or cause of the injury, unless it is shown that it was the intention to mislead, and the employer, or the insurance company carrying such risk, or the commissioner of insurance, as the case may be, was in fact misled thereby. Want of such written notice shall not be a bar to proceedings under this act, if it be shown that the employer had notice or knowledge of the injury." CL 1948, § 412.18 (Stat Ann 1960 Rev § 17.168).

We find no evidence of intent to mislead the employer in this record. We do find evidence to support the findings of the appeal board which are, therefore, binding on us. CL 1948, § 413.12 (Stat Ann 1960 Rev § 17.186).

Affirmed. Costs to appellee.

Kelly, Black, Kavanagh, and Souris, JJ., concurred with Edwards, J.

Carr, J. (*dissenting*). In the month of February, 1957, defendant Northern Tree Company was engaged in cutting down trees and brush in Allegan county for the purpose of clearing a right-of-way for an easement of the Consumers Power Company. Plaintiff was employed as a workman on the project and put in a total of 9 days from February 2d to and including February 16th. It was his claim that his hands were frozen, and under date of August 4, 1958, he made application to the workmen's compensation commission* of the State for hearing and adjustment of claim. In his application he asserted that the circulation of blood in his hands had become impaired and that he had lost a finger in consequence.

Following a hearing before a referee plaintiff was granted compensation, and subsequently the award was affirmed by the appeal board, the opinion filed asserting that the defendant employer through its foreman "had ample notice of the plaintiff's injury." Whether defendant did have the notice required by statute appears to be the controlling issue in the case as briefed and submitted by counsel for the respective parties on this appeal. On behalf of plaintiff reliance is placed on a conversation between himself and his foreman during the early forenoon of February 16, 1957, while defendant-appellants insist that the statement then made by plaintiff to the foreman was insufficient to constitute a notice that he had sustained an injury arising out of and in the course of his employment.

---

* By PA 1955, No 62, the powers and duties of the workmen's compensation commission were transferred to the workmen's compensation department and the workmen's compensation appeal board.—Reporter.

Part 2, § 15 (CLS 1956, § 412.15 [Stat Ann 1960 Rev § 17.165]), of the workmen's compensation law[*] provides in part as follows:

"No proceedings for compensation for an injury under this act shall be maintained, unless a notice of the injury shall have been given to the employer within 3 months after the happening thereof, and unless the claim for compensation with respect to such injury, which claim may be either oral or in writing, shall have been made within 6 months after the occurrence of the same."

Subsequent sections of the statute provide for the form of notice, its service, and for inaccuracies therein without intention to mislead. In the instant case it appears from the testimony of the plaintiff that the clearing project was terminated, at least temporarily, on February 16th, and that he was not recalled for work thereafter. Apparently he remained unemployed because of inability to obtain work until some time in June of 1957, and it further appears that he did not consult a physician with reference to his hands until on or about July 21st of that year. Neither did he notify the defendant Northern Tree Company with reference to the claimed condition of his hands, or his subsequent loss of a finger, prior to the filing of the application for hearing and adjustment of claim.

As before suggested, plaintiff's entire claim that notice was given to the employer through the foreman rests on a brief conversation between the two in the morning of February 16, 1957. With reference thereto plaintiff testified on his direct examination:

"*A.* After he come and got us, we was quite a ways from where we was working where we had a fire. I worked for a while and I went to make a fire, and he come up and asked me, 'what you doing?'—and slam.

---

[*] PA 1912 (1st Ex Sess), No 10, as amended (CL 1948, § 411.1 *et seq.,* as amended [Stat Ann 1960 Rev § 17.141 *et seq.*]).

First, I said, 'make a fire.' I said, 'Make a fire, my hands are cold.' He said, 'In this crew, we don't have a fire,' and he kicked the brush away where I was making the fire. It wasn't no use to talk with him.

"*Q.* What did you tell him about your hands or feet?

"*A.* I told him my hands is cold. His statement was, 'either work or go home.' * * *

"*Q.* Did you work then the rest of that day?

"*A.* I did.

"*Q.* Did your hands get cold?

"*A.* I should say they did. I couldn't hardly—at times if the limb was too large for us to carry, we would take the ax and cut it to where we could carry it; and my hands got to where I couldn't hardly lift the ax.

"*Q.* Did you tell the foreman?

"*A.* I didn't tell him no more. He was quite a far piece from me. I told him once and he didn't let us make a fire. He told me this gang didn't have no fire. The brush I did pile up he kicked away.

"*Q.* Did he know your hands were bothering you?

"*A.* I showed them to him. I said, 'how could a man work with hands cold like that?' He said, 'Either work, or go home.'

"*Q.* You finished out the day?

"*A.* I finished out the day, yes.

"*Q.* Did your hands bother you any more?

"*A.* When I got home that night I put them by the heater and they started aching. They give me lot of trouble. I did everything I knowed of to do to stop them from aching. Around 9:30 or 10 o'clock it was before the feeling come back in like they should.

"*Q.* You said you did everything you knew how to do—what do you mean by that?

"*A.* Wash them in cold water, and I had some alcohol I rubbed them in that alcohol.

"*Q.* After that day did your hands give you any trouble?

"*A*. Yes. Every time I would go out and get in where it was cold, they would start to ache. So, I told my wife I believe my hands was froze, every time the cold would hit my nails would turn white, and you could see where the blood shut off and start again.

"*Q*. Did your feet bother you at all?

"*A*. Not as much as my hands did.

"*Q*. Did they bother you at all?

"*A*. Yes, they did."

After plaintiff's cross-examination before the referee, the following occurred on redirect:

"*By Mr. James:*

"*Q*. Mr. West, when you told this foreman there, when he kicked the fire—you told him at that time your hands were cold and freezing?

"*Mr. Anderson:* I don't believe he testified to that. I object to it as leading. He may have told him his hands were cold, but I don't remember him testifying to anything but that.

"*A*. He walked up and said, 'What are you doing?' I said, 'I am making a fire.' He said, 'We don't have no fire here.' I said, 'My hands is cold, my hands is freezing'—like that. He give a smile and kicked the brush away. I felt if I didn't do what he asked me, the only thing to do was go home."

There is no explanation in the record as to the reasons why the foreman declined to permit plaintiff to build a fire. It does not appear that other employees joined in the request or made complaints that their hands were cold. It is a fair inference from the nature of the conversation, as indicated by plaintiff, that the foreman understood that plaintiff's hands were cold and he desired to make a fire by which he might warm them. It will be noted that plaintiff did not assert that his hands, or either of them, were actually frozen. In other words, he did not assert that he had sustained an injury. Given its strongest possible interpretation in plaintiff's favor, what he

said indicated that he wished to guard against the danger of frozen hands.

It will be noted from the testimony above quoted that his feet were also cold, and he further testified that the gloves that he was wearing were cloth and unlined. It is perhaps a fair inference that he was not dressed suitably for exposure to winter weather, but it does not appear that he explained the situation in this respect to the foreman. Had the latter understood that plaintiff was complaining of an injury that he had already sustained, it is scarcely conceivable that, pursuant to his duties as foreman, he would not have procured medical care for plaintiff.

We are not dealing here with notice of an injury sustained by an employee in the course of his employment and arising therefrom in which emphasis is placed on the results of an accident rather than on the occurrence itself, as in *Mauch* v. *Bennett & Brown Lumber Co.,* 235 Mich 496, cited with approval in *Johnson* v. *Motor City Sales Corporation,* 352 Mich 56, 61. The statutory provision with reference to notice, above quoted, obviously has reference to notice of an injury that has been previously sustained. There is nothing in the record before us in the instant case from which an inference may be drawn that plaintiff's hands, or either of them, were actually frozen at the time he was denied permission to build a fire. He made no statement of such tenor to his foreman. Significant also is the fact that he returned to his work and continued through the balance of the day until 4:30 in the afternoon. In his application for hearing and adjustment of claim plaintiff referred to the fire that he "was going to light to warm my hands and my hands got frozen." The application did not state that plaintiff's hands were frozen at the time but, rather, that they "got frozen." A fair interpretation of the language leads

to the conclusion that the freezing occurred after the colloquy between the foreman and the plaintiff.

It may be noted also that after plaintiff returned to his home that night, and had undertaken to treat his hands, he concluded that the exposure to cold through the day was responsible for the discomfort that he experienced. It is a fair inference from the testimony that the injury of which he complains was sustained after his conversation with his foreman rather than previously thereto. In any event, it is apparent that he did not claim during the conversation in question that his hands were then actually frozen or had previously been in such condition during his work.

On behalf of plaintiff some emphasis is placed on the assertion of the appeal board that defendant through its foreman had notice of plaintiff's injury. As this Court has many times pointed out, section 12 of part 3 of the compensation law (CL 1948, § 413.12 [Stat Ann 1960 Rev § 17.186]) declares that the findings of fact made by the commission, acting within its powers, shall be conclusive in the absence of fraud. However, the requirement of the statute is predicated on there being competent evidence to support the findings and, likewise, that inferences relied on are properly deducible from the testimony. The law in this respect was summarized by Mr. Justice BUTZEL in *Bjorkstrand* v. *Klagstad,* 262 Mich 186, 190, as follows:

"In accordance with CL 1929, § 8451, we must adopt the findings of fact of the department of labor and industry as conclusive, unless there is no competent evidence to sustain such findings. *Meyers* v. *Michigan Central R. Co.,* 199 Mich 134; *Luyk* v. *Hertel,* 242 Mich 445; *Solomon* v. *Detroit United Railway,* 221 Mich 599. We may, however, determine whether there is any competent evidence to support such findings, or whether the inferences drawn are

properly deducible from the testimony. *Ginsberg* v. *Burroughs Adding Machine Co.,* 204 Mich 130; *Kirkley* v. *General Baking Co.,* 217 Mich 307."

See, also, *Ryder* v. *Johnson,* 313 Mich 702. Under the rule recognized in these decisions we think it must be said that the conversation between plaintiff and his foreman was not of such character as to justify a conclusion that defendant was thereby informed that plaintiff had sustained a compensable injury in the course of his employment and arising therefrom. Neither is an inference warranted that plaintiff had at that time actually sustained the injury for which he subsequently sought compensation.

The provision of the statute requiring notice to the employer of an injury suffered by an employee and claimed to be compensable was obviously intended to permit the employer to make an investigation of the claimed facts of the occurrence relied on, to extend medical care and assistance to the employee, and to otherwise meet the obligations imposed on him by the compensation act. The right to such notice is a substantial one, clearly defined by statute and may not be ignored. Compliance with the requirement of the statute is a condition on which the right to receive compensation is based. The conclusion cannot be avoided that in the instant case the required notice was not given. The following language from the opinion of this Court in *Littleton* v. *Grand Trunk R. Co.,* 276 Mich 41, 44, 45, is in point here:

"Obviously, plaintiff cannot recover if proper notice was not given within 3 months and a claim for compensation made within 6 months after the accident, unless defendant had notice or knowledge of the accident and failed to make a report to the department. See CL 1929, § 8431. There is no showing that defendant had either such notice or knowledge. In his conversation with Howison, plaintiff only

stated that he wondered whether the bump he received from a machine the day before Thanksgiving had anything to do with him not feeling well. He gave no details of the accident or how or where he was bumped. It was not such a notice as would reasonably put an employer on inquiry. The provision of the law that timely notice must be given is purposeful and while no niceties of expression are required and the notice may be oral or written, it must be of such a nature so as reasonably to inform the employer that the employee has sustained a compensable accident; it requires more than a casual conversation in which the employee states that he is not feeling well and expresses his wonder whether it was caused by an injury, of which the details are lacking. The purpose of the notice is to give the employer an opportunity to examine into the alleged accident and injury while the facts are accessible and also to employ skilled physicians or surgeons to care for the employee so as to speed his recovery and minimize the loss. See *Podkastelnea* v. *Michigan Central R. Co.*, 198 Mich 321; *Herbert* v. *Lake Shore & M. S. R. Co.*, 200 Mich 566; *Johnson* v. *Bergland Lumber Co.*, 231 Mich 34.

"The award is vacated, with costs to defendant."

See, also, *Gumtow* v. *Kalamazoo Motor Express,* 266 Mich 16; *Maki* v. *S. J. Groves & Sons,* 279 Mich 644; *Gower* v. *Department of Conservation,* 317 Mich 333.

For the reason indicated the case should be remanded to the workmen's compensation appeal board with directions to set aside the award of compensation.

Dethmers, C. J., concurred with Carr, J.

Otis M. Smith, J., took no part in the decision of this case.